# Cummings, Adm'r *v.* Bradley *et al.* Adm'rs.

## *Final Settlement of Administrator's Accounts.*

1. *Rules of practice; power of Probate Court to adopt.*—The Probate Court has power, in order to facilitate the dispatch of business on the settlement of the accounts of executors, administrators, &c., and to avoid unnecessary expense and delay, to adopt and enforce a rule of practice, requiring a party who contests an account to file his exceptions in writing, specifying the items objected to, with the grounds of objection.

2. *Sale of cotton in 1863, for Confederate bonds.*—An administrator can not be charged with a *devastavit* in the sale of cotton in January, 1863, for Confederate bonds, when the record shows that he then had no money in his hands, and that he used the currency so received, at its full value, in paying debts of the intestate contracted before the war.

3. *Receipt of Confederate currency by administrator, in April, 1865.*—An administrator will not be charged, on final settlement of his accounts, with the value of Confederate currency which perished on his hands at the close of the war, merely because he collected it on the 10th day of April, 1865, in payment of a note which fell due on the first of January, 1865, the date and consideration of which are not shown.

4. *Commissions and compensation to administrator.*—*Held :* That the following advances to administrators, on the facts of this case, were not excessive: $300, in present currency, for superintending the intestate's plantation during the years 1861 and 1862, while it was cultivated under orders of the court; $438.40, in present currency, on receipts and disbursements in Confederate money, in 1862–5, amounting to over $17,000 each; and $250 on appraised value of about thirty-five slaves, distributed by them, under an order of the court, in January, 1863.

5. *Payment of taxes by administrator, and redemption of lands sold for taxes.*—When an administrator has possession of lands belonging to his intestate's estate, and they are capable of producing rents, it is his duty to pay the taxes on the lands out of the rents, and not to permit them to be sold for taxes; yet when he is allowed a credit, on final settlement, for money paid in redeeming them under a sale for taxes, this court can not say that the allowance was improperly made, and it is shown that he had no assets in his hands, and was not able to collect money to pay the taxes.

6. *Omission to make payments, as they accrued, in Confederate money.*—It is no objection that certain payments and allowances were not met and discharged, as they accrued, in Confederate money, but were allowed against the estate on a basis of money now current, when the proof shows that if

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

such payments, &c., had been allowed, it would have left that much less to be applied to the debts of the estate, and consequently the unpaid debts would have remained that much the larger.

7. *Decree in form of statute.*—The final decree in favor of administrators in chief held to be in legal form under the statute.—R. C. § 2167.

8. *Preferred claims; presumption as to; error must affirmatively appear.* Inasmuch as certain payments might have been on preferred claims, such as expenses of the funeral, administration, or last illness, and the record fails to show that they were not made on such claims, this court will presume that they were made on such claims, and will sustain the ruling of the Probate Court. Error must be affirmatively shown.

APPEAL from the Probate Court of Wilcox.

The record is too voluminous to attempt more than the following outline of the case.

At the July term, 1874, of said court, the following proceedings were had in the matter of the final settlement of Jesse G. Bradley and Mary Powe (appellees), administrator and administratrix of the estate of Calvin S. Powe, deceased, of their past administration of said estate:

The administrators filed their account current—their final account showing: Debits, $3,255.39; credits, $5,653.48; balance due administrators, $2,398.09. The first credit item in said account is as follows:

"January 14, 1867. By balance due administrator and administratrix, on partial settlement made this day in Probate Court of Wilcox county (voucher 1), $849.65."

To said account current, the administrator *de bonis non*, S. M. Cumming, the appellant, filed written objections and motions to charge as follows:

"1. Object to allowance of the first item on the credit side—balance due them on partial settlement of January 14, 1867, $849.65—because said balance is incorrect. It should not have been allowed in par funds, but in Confederate currency or its value."

"2. The following items in the (partial) settlement of said administrator and administratrix, made 14th January, 1867, are objected to, and the court is moved to consider the same: 1. To the item of $300.00, allowed them for keeping up the plantation for two years; because said allowance is in par funds and should have been in Confederate money or its value. 2. The item of $438.00, commissions allowed them; because said allowance is in par funds and should have been in Confederate money or its value; and because it is too much, and is an improper allowance."

"1. The court is now moved to charge the administrator and administratrix with the value of the Confederate money

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

on hand on the last settlement, January 14, 1867, being $6,275.27; and also moved to disallow voucher number 46, and the $50.00 amount of actual disbursements allowed them on said final settlement of 1867, because said amounts are allowed in par funds instead of Confederate money—said disbursements having been made in Confederate money or in depreciated currency.

"2. The court is moved to charge the said administrators with the sum of —— hundred dollars in Confederate currency for wood sold belonging to said estate and not accounted for; also to charge them with the sum of five hundred dollars, in United States currency, for wood sold belonging to said estate and not accounted for.

"3. Also, to charge them with the sum of $1,216.00, amount of sale bill of personal property.

"4. Also, to charge them with the sum of $5,468.93, amount of sale bill of personal property February 5 and 6, 1863.

"5. Also, to charge them with the value of the amount of said sale bill of $1,216.00 in United States currency.

"6. Also, to charge them with the value of the amount of said sale bill of February 5 and 6, 1863, $5,468.93 in United States currency.

"7. Also, to charge them with the amount of the notes belonging to said estate, now in the hands of said administrator and administratrix, amounting to $20,000.00.

"8. Also, to charge them for the hire of the negroes belonging to said estate, up to the time of their distribution, amounting to $10,000.00.

"9. Also, to charge them with the rent of the lands belonging to said estate, amounting to $10,000.00.

"10. Also, to vouchers numbers 3 and 4, because they are not proper charges against the estate.

"11. Also, to voucher number 10, receipt of A. Stanley, because it is illegal and improper, and no witness to signature.

"12. Also, to voucher number 13, because it is not a charge against the estate, and is not a legal voucher.

"And now, on this, 30th day of June, 1874, the administrator *de bonis non* moves to charge the administrator, Jesse G. Bradley, and the administratrix, Mary Powe, on their final settlement, this day, with the value of fifty-four bales of cotton belonging to said estate, sold to the Confederate government, said cotton being of the value of $10,800.00 with interest thereon."

The first objection above set forth, to the credit of $849.00, coming up to be heard, the said administrator *de bonis non* offered in evidence the two applications to keep said estate together in 1861 and 1862, and the account current on partial settlements of January 14, 1867.

The administrator and administratrix then introduced the decree of Probate Court on said partial settlement of January 14, 1867. This was all the evidence, and the court overruled the objection and allowed the said sum of $849.65, to which appellant excepted.

Appellant then objected to the allowance of voucher 2, for $20.00, by cash, which is in these words and figures : "Due R. C. Jones, twenty dollars, for acting guardian *ad litem* for the minor heirs of the estate of C. S. Powe, deceased, on partial settlements this day of the administration of said estate. Camden, January 23d, '76. J. G. Bradley." The administrator and administratrix introduced, as evidence, the rule of court (set out in the first part of the opinion), and the written objections of administrator *de bonis non* (above set forth). The court allowed said voucher, and appellant excepted.

Appellant then objected to the allowance of voucher number 3, for $30.56, which said voucher was a certificate of probate judge, that J. G. Bradley, as administrator, had deposited said sum to redeem certain lands sold at tax sale. Appellees offered same evidence as against voucher number 2, *supra*, and also the testimony of Bradley, to the effect that the estate had no money in their hands to pay the taxes, &c. ; and they also offered the credit side of their account, showing the balance of $849.65, hereinbefore referred to. The court allowed this voucher number 3, and appellant excepted.

Appellant then objected to allowance of voucher number 4, which was for $91.98, to redeem lands, as shown by certificate of probate judge, as in voucher number 2. The appellees offered the same evidence as against objection to voucher number 2. The court allowed the voucher, and appellant excepted.

Appellant then objected to allowance of voucher number 20, (for $20.00, collector's receipt for State and county tax, 1861), and asked Bradley, administrator, who was a witness : " In what kind of money did you pay said voucher?" to which appellees objected, on the ground that " there was no written objection filed to said voucher " by appellant. The court sustained appellees' objection to the question, and appellant excepted.

Appellant then asked said Bradley to examine voucher number 46, in the account current of January 14, 1867, by cash paid Spurlin & Barnaby on account of note, $60.00, and which voucher is as follows : "Received, Aug. 25th, 1862, of est. C. S. Powe, the sum of sixty dols., which amount is credited on a note of $62.67, in favor of L. B. Barnes. Aug. 25th, 1862. Spurlin & Barnaby." Appellees objected to the question, on the ground that no objection had been filed to said voucher; the court ruled out the question, and appellant excepted.

Appellant then objected to the item of $300.00, allowed appellees for keeping up plantation for two years, at $150.00 a year, in the account current of partial settlement, January 14, 1867, because said allowance was in par funds, and should have been in Confederate money, or its value. The appellees offered in evidence said account of partial settlement, and the decree thereon. The court refused to change or modify said allowance, and appellant excepted.

Appellant then objected to the item of $438.40, commissions to appellees on the partial settlement of January 14,. 1867, on the grounds set out in the written objection above.. Appellees introduced the same evidence as for the last item.. The court refused to change said allowance, and the appellant excepted.

Appellant then moved the court to charge the appellees. with the value of the Confederate money on hand on the partial settlement of January 14, 1867, being $6,275.27,. and, on this motion, offered in evidence the account current of said partial settlement of January 14, 1867 ; the petition to sell personal property, filed October 30, 1863 ; the account sales of the property, of the estate of C. S. Powe, deceased, sold by appellees February 5 and 6, 1863, on a credit until 1st of January, 1864, with interest from date of sale, which sales amount to the sum of $54.68, as appears by the sworn return of appellees ; also, sale bill of estate of C. S. Powe,. filed by appellees January 21, 1862, list of articles sold at the sale of C. S. Powe, January 6, 1862, on a credit of twelve months, with interest from date of sale, which sales amounted to $1,216.00; also, the report of the insolvency of said estate,. filed February 16, 1867, with statement of debts and assets ; also, the deposition of a creditor of the estate mentioned. The appellees then offered the account current on partial settlement of January, 1867, the decree thereon, and the depositions of one R. C. Torrey ; also, petition for order and sale of land, and petition and order changing terms of sale; peti-

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

tion to compromise, filed November 26, 1872, and order of court thereof; also, copy of summons and complaint of eject-ment suit between appellees and Thomas A. Powe, defendant, of which land C. A. Powe, died, seized; also, the testi-mony of one S. G. Cochran, that there never was any report of the sale made of the lands, as specified in said petition; also, the evidence of Bradley, administrator, who testified that the said $6,482.89, in Confederate money, was the pay-ment of the first note for the lands, and was received April 10, 1865; that he had the amount stated as on hand at the time of the settlement, 14th January, 1867; that all of the other Confederate money had been paid out for debts of the deceased, to be payable in good money; that the only debts contracted by appellees were for taxes, supplies and overseer's wages; that the said Confederate money, $6,275.29, is the identical money received by him on said land belonging to the estate. The court refused to charge the appellees with any sum on account of said Confederate money, and the appellant excepted.

The appellant then moved to charge appellees with the value of fifty-four bales of cotton belonging to said estate, and sold to the Confederate government, of the value of $10,800.00. The only testimony on this item was that of Bradley, admin-istrator, and the charge made by appellees in the account of 14th January, 1867. Said Bradley testified that the said cotton was raised after death of deceased in 1862, and belonged to the estate; that he sold them to the Confederate government for Confederate bonds, on 23d January, 1863; that in the winter 1865–6, said cotton was worth forty to fifty cents a pound in the county; that said bales averaged gener-ally 500 pounds; that the said bonds were used in the payment of debts of the estate, contracted by C. F. Powe before the war. The said account of 14th January, 1867, was offered in evidence also, and this being all the testimony, the court refused to charge the appellees with any amount, and the appellant excepted.

The appellees then moved the court to allow a voucher (not numbered), as follows: "January 13, 1874, by cash paid Cochran & Dawson, attorneys, for professional services, $989.50." Appellant objected, on the ground that such fees should have been paid at the time of services, in Confederate money—that is, as to those services performed in Confederate times. The court overruled the objection, and allowed the voucher in full, to which appellant excepted.

The appellees then moved the court to decree the following

as preferred claims against said estate, namely: Vouchers numbers 2, 3, 4, 5, 6, 7, 8, 14, 18, 20, 22, 23; and, also, certain other amounts in the account not numbered. Said vouchers, numbers 2, 3 and 4, have been already hereinbefore set out. Voucher number 5 was collector's receipt for taxes for 1870; number 6, for taxes 1871; number 7, for taxes 1872; number 8, for county taxes, 1860; number 14, receipt by employe of $162.50, for services rendered on plantation; number 18, receipt from A. Stanley for seventy-five dollars, for services as overseer; number 20, collector's receipt for State and county taxes, 1861; number 22, for taxes for 1873; also, the claims set out on the credit side of said account current, as follows: "1874, July 13, by cash paid Cochran & Dawson, attorneys, $989.50;" also, the two amounts allowed as commissions to appellees, which are set out in the said accounts as follows: "By amounts commissions allowed administrators on receipts and disbursements, $100.00. By commissions to administrators on appraised value of slaves distributed, $250.00;" also, the following two items set out in the account current of 14th January, 1867, namely: "Allowance to administrator for keeping up plantation two years, $150.00 per year, $300.00. Commissions to administrators, $438.40;" also, interest allowed on all the above vouchers and amounts, $473.04, was asked as a preferred claim. Appellant objected separately to each of the foregoing vouchers and claims being allowed as preferred claims against said estate. The court overruled the objections, and the appellant excepted severally and separately to the decision of the court as to each of said vouchers, claims, &c.

The proceedings being concluded, the court rendered the following decree:

The court, upon hearing the matters pertaining to the account filed, and upon considering the evidence, &c., "whereupon it is shown, by sufficient proof, that said administrators have received of the assets of said estate the sum of $3,255.39 in cash, and that they have legally and justly expended, for said estate, the sum of $5,653.48, for the items of which expenditure they produce vouchers which are satisfactory to the court, and the said administrators now being charged with the said sum of money, ascertained as aforesaid to have been received by them, and credited by the amount by them so justly paid and expended, it is found by the court that there is due from said estate to said administrator and administratrix, a balance of $2,398.09; and, the said account appearing correct, it is ordered, and judged, and decreed by

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

the court, that the sum be, in all things passed and allowed as above stated, together with the vouchers and evidence thereof, and all other papers relating to the previous administration of said estate, recorded. It is further ordered, adjudged and decreed by the court, that said J. G. Bradley and Mary Powe, former administrator and administratrix, have and recover of Samuel M. Cumming, the administrator *de bonis non* of said estate of Calvin S. Powe, deceased, the sum of $2,398.09 ; and it appearing that the said estate is insolvent, and that the said balance is for expense of administration necessarily incurred, it is therefore ordered, adjudged and decreed, that such balance shall be a preferred claim against said estate, and shall be paid as other preferred claims are paid."

S. M. Cumming, the administrator *de bonis non* of the estate of said Calvin Powe, deceased, by his attorney, says that there is manifest error in the record, and that the Probate Court erred in this :

1. In overruling the objection to voucher number 1, the item of $849.65, and in allowing said amount.

2. In overruling the objection to the allowance of the item of $20.00, voucher number 2, and allowing said item as a charge against the estate.

3. In overruling the objection to the allowance of item $30.56, voucher number 3, and in allowing said item as a charge against the estate.

4. In overruling the objection to the allowance of the item of $91.68, voucher number 4.

5. In sustaining the objection of appellees to the question asked Bradley, administrator : "In what kind of money did you pay said voucher ?" (number 20.)

7. In overruling the objection to the allowance of the item of $300.00, and allowing said item in full as a charge against said estate.

8. In overruling the objection to the allowance of the item of $438.40, and in allowing said item in full as a charge against the estate.

9. In refusing to charge appellees with the value of $6,275.27, Confederate money on hand, on the partial settlement of January 14, 1867.

10. In refusing to charge appellees with the value of the fifty-four bales of cotton sold to the Confederate government, or to charge them with any amount.

11. In granting the motion of appellees to allow them the item of $989.50 attorney's fees in full in good money.

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

12. In allowing appellees $250.00 commissions on appraised value of slaves divided.

13. The court erred severally and separately as to each of the vouchers numbered 2, 3, 4, 5, 6, 7, 8, 14, 18, 20, 22, and 23 in allowing each of said vouchers as preferred claims against said estate, and the amounts objected to not numbered, namely: Attorney's fees, $989.50; commissions to administrator and administratrix, $100.00; commissions on slaves, $250.00; allowance to administrator and administratrix for keeping up plantation, $300.00; commissions to administrators, $438.40, and interest on said items, $473.04.

14. In rendering a decree against the administrator *de bonis non* in favor of the former administrators, for the sum of $2,398.09.

15. In decreeing said balance of $2,398.09 to be a preferred claim against said estate.

16. In other matters set out in the bill of exceptions and in the record.

17. In the final order and decree.

S. J. CUMMING, for appellant.—1. The court erred in allowing voucher number 1 for $849.65, because there is no proof in the record that any such balance was due said administrator.

2. The twenty dollars guardian *ad litem* fees should not have been allowed. The minors received a large number of slaves from the estate, and the fees to their guardian *ad litem* should have been paid by them or out of their estate. The date of the voucher is January 23, 1867, and in February, 1867, administrators filed their petition of insolvency; nor was there any proof that the administrators had paid the fees. It was not a proper charge against the estate, as it was then being settled as an insolvent estate.—*Pinkard v. Pinkard*, 24 Ala. 251.

3. Vouchers numbers 3 and 4 stand much on the same ground. Administrators are trustees, and they can not be permitted to stand by and see the property of the estate sold at public sale for taxes. The taxes for each year was $12.80, but the court allowed him $30.56 for the year, making a loss to the estate of over $18.76. The record shows that the administrators, at the very time and since they were appointed administrators, they had large property, real and personal, in their hands belonging to said estate. The land was assessed to *owner unknown*, showing that the administrators did not ever give the lands in to the tax

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

assessor. Voucher number 4 is much worse, as on that he was allowed $91.80, when the voucher itself only shows $30.56. The tax sale was in March, 1870, and must have been for the taxes of 1869, or an earlier date. By the first and second items of debits in account current it appears that the administrators collected $79.25 and $25.25 in greenbacks, on judgment against W. E. Powe, in December, 1868, and January, 1869, consequently they had enough in their hands at the time the lands were sold to pay the taxes. The vouchers should not have been allowed.

4. The question, on hearing objection to voucher number 20, asked Bradley: "In what kind of money did you pay said voucher?"—the payment being made in 1862, the inquiry was a proper one, and should have been permitted.

5. The Spurlin and Barnaby voucher was clearly illegal *prima facie.* It should either have been explained or disallowed. The court also erred in allowing voucher forty-six.

6. The plantation was kept up in 1861 and 1862, and the administrators should have been paid, if paid at all, out of the proceeds of the crops of 1861 and 1862. By not doing so they committed a fraud upon the estate. But the record nowhere shows that they got any order to keep up the plantation either year; they merely petitioned for such an order. The objection should have been sustained.

7. As to the $6,275.27 in Confederate money on hand at the close of the war, and lost to the estate, the administrators should have been charged with the value of it. The estate was in debt, money lying idle in the hands of the administrators, a large and comparatively rich estate dwindled to almost nothing. The list of claims returned by the administrators on the petition of insolvency, shows that the estate was in debt, and the balance in favor of the administrators of $2,398.09 on the final settlement, which might have been paid by them. (See decree.) Now, I submit to the court, whether or not such proceedings, actings, and doings in administrators should be tolerated by this court.

8. The motion to charge administrators with the value of the fifty-four bales of cotton should have been allowed. The only defense the administrators set up was, that they used the money in paying the debts of the estate. The record contradicts this, for on the final settlement they had over $6,000 in Confederate money on hand. Had the administrators kept this cotton something might have been saved to the creditors.

9. The attorney's fees were for services rendered, in a

great part, during the war. The administrators should have paid them then, and not have taxed the estate in good money.

10. The slaves were divided in January, 1863, and on the final settlement in July, 1874. Previous to the act of December, 1861, there was no law allowing commissions on slaves distributed. C. S. Powe died before that time, and the administrators were not entitled to commissions on the slaves. The appraisement was in January, 1863, and of course, very high. By section 2162 of the Code, commissions were allowed on the appraised value of all personal property, &c. I insist that his commissions should have been taken by him in Confederate money. If administrators are to be allowed commissions on the value of the slaves at the time of the settlement in July, 1874, they would not get much.

11. The court most certainly erred in allowing the voucher specified in the thirteenth exception, and for these reasons: 1. Some of them are not such as constitute preferred claims. 2. Several of said claims were had, as appears from their date and from the administrators' admissions by stating them in their account current under the head of Confederate credits, in Confederate money; and by this ruling of the court he is to be repaid those amounts in good money.

12. The final decree of the court is wrong in rendering a decree against the administrator *de bonis non* for the balance, $2,398.09. It should merely have stated the balance as a preferred claim, and not have rendered a decree against the present administrator. Such a decree may render him personally liable, though he may not receive assets of the estate sufficient to liquidate it. I do not think that section 2167 authorizes such a decree.

COCHRAN & DAWSON, *contra.*—1. The court did not err in overruling the objection to voucher number 4 for $849.65. This was the balance ascertained to be due to the administrators upon their partial settlement. This partial settlement is *prima facie* correct, and the burden is upon appellant to show its incorrectness, which he has not done. 1 Brick. Dig. 971–972; *Scruggs & Lindsay v. Orme*, 46 Ala. 533.

2. The objection to voucher number 2 was properly overruled. The voucher itself shows that it was a necessary incident to the administration. At the time the expense was incurred the estate had not been declared insolvent, and.

for that reason the voucher was not put into the partial settlement; the administrator reserving it until the final settlement, expecting that there would then be a distribution, and that the voucher would be deducted from the share of the distributee for whom the expense was incurred. But the estate turning out to be insolvent, the distributee had no share in it; and although the general rule is that the cost of a guardian *ad litem* is a charge only against the share of the distributee for whom he was appointed, yet, in a case like this, where the estate has turned out to be insolvent, after· the expense was incurred in good faith, we submit that it was more equitable that it should be paid by the estate than by the administrator individually.

3. The court properly overruled the objections to vouchers· 3 and 4. At the time that the land was sold for taxes, the administrator not only had no funds of the estate on hand, but it was actually in debt to him the sum of $849.65. As· soon as he could, he redeemed the land, and thus no loss has come upon the estate except the penalty for redeeming.

4. The court decided correctly in sustaining appellee's objections to questions propounded by appellant to Bradley. A rule of the said Probate Court requires objections to the account to be filed in writing. To allow new objections to be made at any stage of the settlement, without notice to the administrator, is putting him at great disadvantage, and involving the whole proceeding in uncertainty. The court had a right to make proper rules to insure the orderly dispatch of its business.—Rev. Code, § 638, sub. 6; Broom's· Legal Maxims, 94 (127); 5 Watts & Sergeant, 175; *Golden v. Prince*, 3 Wash. 313; 12 Peter's, 472, 475; 46 Ala. 24.

5. The objections to the items of $300.00 and $438.40,·· which are items on the credit side of the partial settlement, had already been passed upon in the consideration of the objections to voucher 1, of which these two items form a part; all· of them had been passed upon by the court on the partial settlement, and are *prima facie* correct, and there was no evidence to justify the court in setting aside the· conclusion reached on that partial settlement.

6. The court did not err in refusing to charge the administrators with the sum of $6,275.27 in Confederate money on hand at the partial settlement. The whole of this amount was received from Thomas A. Powe, for land, on the 10th day of April, 1865. The sale of this land has not been confirmed, the title is in the estate, and an action of ejectment is now pending to recover it. All of the Con—

federate money received by the administrators, except this last amount, was used in paying the gold debts of decedent, and in the expenses of administration.—*Autton v. Williams,* 35 Ala. 517; *McLevain v. Taulks,* 46 Ala. 610.

7. The administrators were properly *not* charged with the fifty-four bales of cotton, because, although they sold them for Confederate bonds, they were sold at a high price— forty cents a pound—and every dollar received therefor was applied to paying the gold debts of decedent, contracted in his life-time.—*Grant and Wife v. Tucker,* 18 Ala. 27; *Meadows et al. v. Edwards & Brassell,* 46 Ala. 358. There was no loss to the estate, but on the contrary, the sale was a great benefit to it.

8. There was no error in allowing the administrators credit for the amount paid for attorney's fees. The evidence shows that the services were rendered, and that the charges were reasonable. The administrators were not compelled to pay the attorneys in Confederate money, even if they had had it on hand to pay as the services were rendered; but up to the 10th of April, 1865, they had no Confederate money on hand, for the evidence shows that all the Confederate money received up to that time was consumed in paying gold debts, taxes, and other expenses of administration; and in fact, up to the 10th of April, 1865, they had paid out more Confederate money than they had received for the estate. There is a suit now pending to recover the land, as a payment upon which the Confederate money received on the 10th of April, 1865, was taken. The estate has not lost one dollar on account of Confederate money received by the administrators.—*Bowen v. Montgomery,* 48 Ala. 354.

9. The commissions allowed on the slaves distributed were allowed upon their appraised value, and were reasonable and proper.—Revised Code, § 2162.

10. The vouchers allowed by the court as preferred claims, were for expenses of administration; and it was necessary for the court to ascertain that fact in order to render a proper decree.—Revised Code, § 2167; *Cunningham's Administrator v. Beard's Administrator,* 44 Ala. 317.

STONE, J.—1. The Probate Court of Wilcox county adopted rules of practice, and, among others, the following, in reference to settlements of executors, administrators, and guardians: "For the purpose of facilitating the orderly dispatch of matters pertaining to settlements, when an account may be disputed, the party contesting must file his excep-

tions in writing, specifying to which items of the account he · excepts, with the ground of exception, or, as to which additional proof may be required." The administrator *de bonis non* had filed exceptions to several items of the account, and . the trial was entered upon. Pending the trial, he offered oral objections to items to which he had not excepted to, and offered proof in support of such objections. He made a similar offer of objections and proof, against items he had excepted to, but on grounds other than those specified in his exceptions. The court confined him to his written exceptions, and ruled out the evidence; to which ruling an exception was reserved. The question arises, had the Probate Court authority to make such rule, and to compel parties litigating before it to conform to it?

In *Golden v. Prince*, 3 Wash. C. C. 313, it was declared, that " every court possesses the power of making its own . rules of practice, unless forbidden by law." And in *Odenheimer v. Stokes*, 5 Watts & Serg. 175, commenting on a rule of practice established by an inferior court, the Supreme Court of Pennsylvania said : " The object of such rule is to · prevent unnecessary expense, and useless delays or objections, often frivolous. It does not interfere with the rules of evidence. It does not take away the right to demand proof of execution, but only requires the party to give notice by affidavit that he means to contest the fact. Not doing so, is a waiver of objection." Speaking of the case of *Mills v.* . *U. S. Bank*, 11 Wheat. 431, the court said : " It was decided in that case to fall within the power to regulate the practice for the advancement of justice, and especially, to that end, . to prevent delays in the proceedings." See, also, *Ex parte Paultney v. City of Lafayette*, 12 Peters, 472.

We think the argument stated above is eminently sound and conservative, and we adopt both the argument and the · conclusion. Such rules, properly framed, narrow the field of contestation, and prevent needless expense, surprise and delay. Of course, such rules must be so adjusted as not to deny to parties legal rights; and, in cases like the present, if it be necessary to attain the ends of justice, we will not say that, on proper showing, parties should not be allowed to file additional exceptions. In granting such leave, however, as in all other cases of amendment, the court should see to it that no undue advantage is taken of the opposing party. This can be prevented by a continuance, if necessary. In the present case, no motion was made for leave to file additional exceptions; and the Probate Court did not err in .

.excluding the evidence offered. This disposes of all the questions which sought to controvert items not excepted to, and which assailed items that were excepted to, on grounds which had not been specified.

2. The attempt to charge the administration in chief, as for a *devastavit*, with the fifty-four bales of cotton sold by them January 23, 1863, can not be sustained. The estate was then without money, and the accounts and settlements show that every dollar of that money was paid, at its par value, on debts of the intestate contracted before the war. We think that, considering the insecurity of property, and the instability of values in this State, at that time, caused by the gigantic war in which we were engaged, this was very prudent administration.

3. On the 10th April, 1865, the administrator and administratrix in chief collected, in Confederate money, of T. A. Powe, $6,482.89. This was a last payment, made by him, on his note due January 1, 1865. The date of this note is not given. Before this collection, they had disbursed all the money assets of the estate, Confederate or otherwise, that had come to their hands, and a small fraction over. Consequently, when they come to make their annual settlement in 1867, it was shown that, after making such collection of $6,482.89, they had in hands, assets of the estate, in Confederate money, $6,275.27 ; some $207 less than their latest collection ; that from T. A. Powe. This latest disbursement, up to that time, and up to the destruction of Confederate securities by the close of the war, was made on the first of March, 1865. The administrators in chief are not shown to have been allowed, or even to have claimed to be reimbursed out of the estate, for the excess of payments made by them for the estate in Confederate money, over the assets, less this last collection, received by them in the same currency. The administrators in chief, in their annual settlement of 1867, were allowed a credit in the following language : "By amount Confederate funds on hands, $6,275.27." The administrator *de bonis non*, as to this item, filed the following exception : "The court is now moved to charge the administrator and administratrix with the value of the Confederate money on hand on the last settlement, January 14, 1867, being $6,275.27." It will be observed that this exception does not complain of the administrators in chief for making this collection in Confederate money ; made, as we judicially know it was, about the time of the surrender of the Confederate armies. The effort is to charge them with its value.

[Cumming, Adm'r v. Bradley et al. Adm'rs.]

In the absence of an exception, bringing up the question, we must suppose the terms of the contract authorized the collection in that currency.

There is nothing in this record to justify us in sustaining this exception. We judicially know that Confederate money, at that time, was almost or quite valueless. We can not believe, in the absence of proof, that it would have been received in the payment of ante-war debts, or in the purchase of property. Moreover, it is in proof that one of the largest creditors of the estate had, long before, refused to receive it in payment; and the proof shows the money was not used, but perished in the hands of the administrators in chief. There is nothing in this exception.

4. The proof does not convince us that the Probate Court made an excessive allowance to the administrators, for superintending the plantation for two years, or for commissions. The commissions for distribution are placed very low, and no interest allowed on this item.

5. The question of taxes, and redemption of the lands from tax-sale: The administrators had no moneys, or available assets of the estate, and they were not bound to use their own funds, so far as we can discover from this record. We desire not to be misunderstood. It was the duty of the administrators, if the lands were in their possession, and capable of yielding rents, to pay the taxes out of such rents, and not to permit them to be sold for taxes. There is not enough in the record to show mal-administration in this regard.

6. The remaining exceptions are all of a class, namely, that the payment and allowances should have been met and discharged, as they accrued, in Confederate money, and should not be allowed against the estate on a basis of money now current. As to one important item, attorney's fees, it does not appear that more than one-third of the services were rendered until after the close of the war. The proof is, that these charges are reasonable, and no question is raised on that account. The commissions allowed to the administrators seem reasonable. If they had taken these commissions out of the Confederate money in their hands, it would have left that much less to be applied to the debts of the estate, and, consequently, the unpaid debts would have remained that much the larger. The estate was then very amply solvent, and it was not probably thought it would ever become insolvent. We do not think there is any ground for sustaining this objection.

[State ex rel. Dunklin & Steiner v. Comm'rs of Covington Co.]

7. The final decree in favor of the administrators in chief, is, in form, strictly according to the statute.—Revised Code, § 2167.

8. In the voucher $849.65, balance found due to administrators on annual settlement of 1867, is included an item: "1862, Aug. 25. By cash paid Spurlin & Barnaby on account of note, $60.00." This payment helps to make up the voucher number 1, $849.65, which was claimed and allowed as a payment or disbursement in the final settlement. Another small item, "paid Jenkins & Fullenwider $1.25," is in the same category. This entire item, $849.65, went into the final settlement, and was allowed as a preferred claim. There is nothing in the record to show the consideration of the debt to Spurlin & Barnaby, or the debt to Jenkins & Fullenwider. If they were ordinary debts of the estate, their payment by the administrators did not constitute them preferred claims. On the other hand, if they were part of the expenses of administration, or, were for funeral expenses, or expenses of the last illness, they were preferred claims. Inasmuch as such payments might have been on preferred claims, and the record does not inform us to the contrary, the rule of this court does not allow us to presume error, and, on such presumption, to reverse the ruling of the Probate Court. Error must be affirmatively shown.—1 Brick. Dig. 781, § 120. We feel bound to presume, in support of the ruling of the Probate Court, that these payments were made on preferred claims.

All the other items going to make up voucher 1, $849.65, are for expenses of administration, and are properly preferred claims.

There is no error in the record, and the decree of the Probate Court is affirmed.