# Dickie *et al. v.* Dickie, Adm'r.

### *Final Settlement of Administration.*

1. *When onus on administrator on final settlement, to show error in inventory.*—When an administrator returns in his inventory a debt due from himself to his intestate, and, on final settlement, contends that the debt was in fact paid to the intestate while living, the *onus* is on him to show that it was erroneously included in the inventory by mistake or otherwise; and in the absence of satisfactory explanation, he must be charged with the amount.

2. *When onus on distributees to disprove correctness of credit allowed on partial or annual settlement.*—A credit allowed on a partial or annual settlement being presumptively correct (Code, § 2531), the *onus* is on the distributees, on final settlement, to overcome this presumption; and in the absence of satisfactory evidence of its incorrectness, the credit must be allowed.

3. *Administrator not credited with amount advanced distributee.*—On settlement of an administrator's accounts, he can not be allowed a credit for money advanced to a distributee, but the amount may be charged against the distributee, when his distributive share has been ascertained.

4. *Confederate money; liability for; entitled to credit.*—An administrator who, during the late war, received Confederate treasury notes in

good faith, in the course of administration, is only liable for its due and proper administration; and having exchanged for registered bonds the surplus remaining in his hands after paying off the debts, he is entitled to a credit for the amount so lost to the estate, when no fraud or collusion is charged against him, and there is no proof that he could have invested it in any other way.

5. *Administrator's debt, when he is creditor of his intestate presumed paid up on receipt of assets.*—When an administrator, being a creditor of the intestate, receives assets which he can lawfully apply to the payment of debts, he is bound to make the application, and the debt will be presumed to be paid; and if he receives depreciated currency in payment of the debts of the estate, he is required to apply it in payment of his own debt.

6. *Note for slave—chargeable with value in good money at time of sale.* For the amount of a note given for the purchase-money of a slave, sold by the administrator under an order of court, he is *prima facie* chargeable in settlement, not for the amount specified in the note, but for the value of the property in good money at the time of the sale.

APPEAL from Probate Court of Calhoun.

Tried before the Hon. ALEXANDER WOODS.

This is an appeal by Washington Dickie as administrator of the estate of E. C. Dickie, deceased, and is taken from rulings of the court upon certain items of his account upon final settlement of said estate. The character of the items, and the action upon them, sufficiently appear in the opinion rendered by this court.

CALDWELL, HAMES & CALDWELL, for appellants.

G. C. ELLIS, *contra.*

CLOPTON, J.—The evidence does not convince us, that the Probate Court erred in refusing to charge the administrator with the amount alleged to have been collected from Cochran. The witnesses contradict each other as to the collection, and there is no proof that Cochran was indebted to the estate. Nor is the evidence sufficient to relieve the administrator from liability for the pistol purchased by him. Supposition or belief, that it had been accounted for in some prior aggregate items will not answer. The fact must be made to appear with reasonable certainty.

We are unable to satisfactorily ascertain, from the record, the facts in respect to the sum of $102.19, with which the distributees moved to charge the administrator, as a debt owing by him to the intestate. The administrator, admitting the debt originally, testified that he paid it to the decedent in his lifetime; and yet, as we understand the bill of exceptions, it was included in the inventory returned to the Probate Court in 1868, several years after the death of the intestate. Payment in the lifetime, and a verified admission of the debt

several years after death are not reconcilable. If so returned, the administrator is *prima facie* chargeable; and the *onus* is on him to show, that it was erroneously included in the inventory, by mistake or otherwise. Without satisfactory explanation, he should be debited with the amount.

In the annual settlement of 1868, the administrator was allowed a credit of $974.45, as disbursed in payment of a note, made by intestate and E. McClelen, payable to John B. Win, guardian. From the endorsements on the note, it appears, that McClelen, in February, 1863, paid the sum of $590.30; and in November thereafter, the administrator paid to McClelen the sum of $384.15, being the balance of principal and interest. The distributees moved to reduce the credit to the latter amount. What the relation was between the makers, whether of principal and surety, or of co-makers equally bound—is not shown. The credit having been allowed on an annual settlement, the presumption is in favor of its correctness—that the intestate was primarily bound, and that the administrator had refunded to McClelen the amount he had paid in satisfaction of the note. On the final settlement, the burden is on the distributees to show that the allowance is improper. The evidence set out in the record is ineffectual to overcome the presumption of correctness.

The administrator was allowed a credit for money advanced to the widow. The duty and authority of an administrator are, to receive and collect the assets of the estate, pay the debts and expenses of administration, and distribute the *residuum* among those entitled. Money, advanced to a distributee during the administration, is not money paid on account of the estate; and the allowance on his account as administrator of a credit for money so advanced, is unauthorized. Such mingling of accounts tends to produce confusion, and to render it difficult, if not impracticable, to ascertain and equalize the shares of the several distributees. The money advanced to the widow should have been disallowed as a charge against the *estate*, and charged against her distributive share, after it had been ascertained. *Willis v. Willis*, 9 Ala. 330; *Parker v. McGaha*, 11 Ala. 521.

During the early period of the administration, Confederate treasury notes constituted the circulating medium, and were employed as money in all the transactions of business. The rule settled by our decisions is, that a personal representative, who received, in the course of administration, and in good faith, Confederate money, did not commit a *devastavit*, and is only liable for its due and proper administration. A part of the Confederate money received by the administrator was used in paying the debts of the deceased, and a part was de-

[Dickie et al. v. Dickie, Adm'r.]

posited in the proper office to be exchanged for registered bonds bearing interest. The remainder became worthless in the hands of the administrator. The money of the estate was kept separate; no fraud or collusion is charged ; and there is neither allegation nor proof, that it could have been otherwise invested. The court, under the circumstances, properly refused to disallow the credit for the amount funded. *Morris v. Morris*, 58 Ala. 443 ; *Cumming v. Bradley*, 57 Ala. 224 ; *Waring v. Lewis*, 53 Ala. 615.

When the decedent is indebted to the personal representative, and assets of the estate come to his possession, the title and ownership of which he can transfer, and which he is legally authorized to apply to the payment of the debt, it is extinguished. No delay in making the application, and no improper diversion of the assets, can defeat the satisfaction of the debt. The law regards it as paid from the time he receives such assets. *Miller v. Irby*, 63 Ala. 477 ; *Trimble v. Farriss*, 78 Ala. 260. Any kind of money, which the administrator receives as a valid payment of debts due the estate, will be effective for this purpose. Having the sole right and authority to manage and collect the assets of the estate by converting them into money, he will not be permitted to receive in his representative capacity a depreciated currency as money, suffer it to become worthless in his hands, devolve the loss on those, whose interests are committed to his care, prudence and management, and keep his own debt alive. Such is not a due and faithful administration of such currency. He must retain in payment of his own claim the same kind of money, which he receives in payment of demands due the estate. The court should have sustained the exception to the allowance of the debt, claimed by the administrator, as due him by the intestate.

At a sale of property of the estate, the widow purchased a negro woman, and gave her note with two sureties for the purchase money. The distributees moved to charge the administrator with the amount of this note. The administrator is *prima facie* chargeable with the sale bill. No steps were taken to collect the note, except to ask the widow a time or two if she could pay it. The excuse is, that he knew the widow could not pay it, and that he did not bring suit, because he thought it was useless to run the estate to costs. It is not shown, that the makers of the note were considered solvent, when it was accepted by the administrator ; and if solvent, that the sureties on the note did not so continue a sufficient time to make a suit available. On the evidence set out in the record, the administrator is chargeable with the note. *Stewart v. Stewart*, 31 Ala. 207. He should not, however, be charged

with the full amount of the note. The property was sold in December, 1862, the purchase money being payable twelve months after date. The reasonable inference is, from the then condition of the country, and the character of the only currency in circulation, that it was expected and understood, that the note was payable in Confederate money. . In such case, the administrator only could have collected the value in good currency of the property at the time of the sale, and only with this amount should he be charged. The sum with which he may be charged should be set off against the distributive share of the widow, *pro tanto*, unless she interposes some available defense. *Whitfield v. Riddle*, 52 Ala. 467 ; *Acts* 1878-9, 186.

Reversed and remanded.