# Stewart *v.* McMurray.

### *Final Settlement of Guardian's Accounts.*

1. *Confederate transactions; guardian's liability on account of.*—On final settlement of a guardian's accounts, whose active duties were performed during the late war (1861-65), the court adheres to the principles heretofore decided in the cases cited, holding that the guardian was required to exercise the decree of diligence which a man of ordinary prudence, under similar circumstances, would bestow on his own private

[Stewart v. McMurray.]

affairs of like importance; that he might receive Confederate currency in payment of debts, no fraud or bad faith being shown; and that the court would not deal harshly with him, in the absence of circumstances showing bad faith or gross carelessness.

2. *Burden of proof as to credit claimed.*—When a guardian or administrator, on final settlement of his accounts, claim a credit for assets not reduced to possession, the *onus* is on him to show that he used due diligence to collect, or that nothing could have been collected by due diligence; and if he claims a credit for a debt paid, he must at least show a *prima facie* case of liability against the estate.

3. *Investment in Confederate bonds.*—Under the statute approved November 9th, 1861, authorizing guardians and other trustees to make investments in bonds of the Confederate States (Sess. Acts 1861, p. 53), it was not necessary that an order should have been first obtained from the Probate Court.

4. *Proof of insolvency; general reputation.*—The insolvency of a person at a particular time can not be proved by general reputation; as, that "he was generally reputed to be insolvent"

5. *Scaling Confederate values; interest against guardian.*—On final settlement of a guardian's accounts, whose active duties were all performed during the late war, Confederate currency being paid out and received, if any balance is found against the guardian," it should be scaled down to its actual value, or purchasing power at the time of the *devastavit* or conversion;" and while interest should be charged against him on this balance, the interest should not be compounded.


APPEAL from the Probate Court of Randolph.

Heard before the Hon. S. E. A. REAVES.

In the matter of the final settlement of the accounts and vouchers of F. A. McMurray, as guardian of Mrs. M. M. Stewart, *nee* Phillips. The record does not show when the guardian was appointed; but, in his account current as filed, he charged himself, as of August 29th, 1862, with the sum of $6, 768.76, "amount of decree against Heflin and Towles, administrators of estate of Harrington Phillips;" and he asked credits for investments in bonds of the Confederate States, March 15th, 1864, amounting to $3,650, and for uncollected notes due in April, 1863, amounting to $1,250. The settlement was made on the 11th October, 1886. The court, by its decree, charged the guardian with assets received amounting to $6,768.76, and allowed him credits amounting to $7,323.61, making a balance of $534.85 in his favor. Several exceptions were reserved by the ward to the rulings of the court, both in the admission of evidence, and the allowance of credits claimed; and these rulings are here assigned as error. A statement of the facts in detail is not necessary to an understanding of the opinion of this court.

N. D. DENSON, for appellant.

STONE, C. J.—The present proceeding was the settlement of a guardianship, the active duties of which were performed during the war, 1861-5. . Civil society was then abnormal. The seceding States were without a currency which was regarded as lawful by the Government of the United States. The Confederate States improvised a currency of its own, which became a measure of value and a circulating medium, because none other was obtainable. Judicial administration was paralyzed, and collections could not be enforced. Still, debts were paid, and thereby cancelled, with Confederate treasury-notes; and if no fraud or bad faith could be imputed, trustees were held blameless, if they received payment of dues to the trust estate in such currency. But the disturbed condition of the country did not absolve them from all duty. They were required to employ that diligence which an ordinarily prudent man, similarly circumstanced, would bestow on his own monetary affairs of like importance. Still, in the absence of facts or circumstances showing bad faith, or gross carelessness, we should not, and will not, deal harshly with trustees, who were so unfortunate as to be burdened with a trust in that perilous epoch. This court has heretofore said so much, and has committed itself so fully to a line of policy in transactions of this kind, that we will indulge in no further general remarks.—*Waring v. Lewis*, 53 Ala. 615; *Ferguson v. Lowery*, 54 Ala. 510; *Foscue v. Lyon*, 55 Ala. 440; *Mason v. Buchanan*, 62 Ala. 110; *Cummings v. Bradley*, 57 Ala. 224; 3 Brick. Dig. 532, § 30.

2. A well-defined principle of law bears on the questions raised by this record. When a settling guardian, or personal representative, claims a credit for assets not reduced to possession, or for the payment of a claim preferred against the trust, and exception is filed to the allowance of the credit, the burden is on the guardian, or personal representative, as the case may be, to prove the justness of his claim; that is, he must show that he employed due diligence to collect the demand, or obtain possession of the property, for whose loss he asks credit, or he must show that diligence could have accomplished nothing. So, if the exception be that he improperly paid an alleged debt resting on the trust, he must at least show a *prima facie* case of liability.—*Willis v. Willis*, 16 Ala. 652; *Hughes v. Mitchell*, 19 Ala. 268; *Smiley v. Reese*, 53 Ala. 89; *Teague v. Corbitt*, 57 Ala. 529; *Munden v. Bailey*, 70 Ala. 63.

3. It was objected to the allowance of the credit of $3,650.00, claimed by the guardian, that he made the investment without obtaining the order of the Probate Court

therefor. The statute did not require that an order should be obtained before making such investment.—Acts Ala., 1861, pp. 53–4.

4. Two other vouchers, 1 and 17—loans to Forrester & Co., Robinson & Carlisle sureties, and to Taylor, same sureties—were severally excepted to, as credits. These exceptions, on the testimony found in this record, ought to have been sustained. The testimony of Dr. Heflin, that the sureties were "generally reputed to have been insolvent," should not have been received, objected to as it was. Insolvency can not be proved by general reputation. There is, also, a failure of proof that the guardian made any effort to collect either principal or interest of these claims, or that when they matured they were not collectible.

One item—$1,250—on the debit side of the account, seems to have been overlooked.

In what we have said above, we have only responded to the exceptions and the grounds of them as shown by the record.

5. In re-stating the account, it must be borne in mind that the assets, as they came under the authority and power of the guardian, were in their nature Confederate securities. They came to him during the war. If any balance is found against him, it should be scaled down to actual value, or purchasing power at the time of the *devastavit*, or conversion. On this amount the guardian should be charged interest. We do not think this is a case for compound interest.

Reversed and remanded.