# Trimble *v.* Fariss.

*Bill in Equity by Creditor, against Devisees of Deceased Debtor.*

1. *Liability of lands, descended or devised, to payment of debts; defenses against, by heirs or devisees.*—Lands descended or devised are by law subject to the debts of the deceased owner; but, in any suit or proceeding seeking to subject them, whether by the personal representative or a creditor, the heirs or devisees may plead the statute of limitations, or set up any other defense which would be available to the personal representative, or to the decedent if living, when sued by the creditor; and the fact that the creditor himself became the personal representative, neither avoids the bar of the statute of limitations, nor affects the right of the heirs or devisees to plead it.

2. *Right of retainer by executor or administrator, and presumed extinguishment of debt; at common law, and under statutes.*—At common law, an executor or administrator had the right to retain for his own debt out of any legal assets that came into his hands, in preference to other creditors of equal degree; and having this right, when assets came into his hands, which he might apply, the law made the application, and his debt was regarded as extinguished. But this principle is modified by the statutory provisions governing the administration and settlement of estates, which restrict the rights and powers of executors and administrators, forbid any preference among debts of equal degree, and require an order of court for the sale of property before it can be applied to the payment of debts; and under these statutory provisions, if an administrator accounts fully for all assets that have come to his

[Trimble v. Fariss.]

hands, not retaining for his own debt, nor exercising his statutory rights to procure a sale of the property, the heirs or devisees may set up the statute of limitations in defense of a suit to subject the lands.

3. *Answer and cross-bill, as between co-defendants.*—One defendant can not obtain active relief against another, without becoming himself an actor; and an agreement of record, signed by the complainant and some of the defendants, that the latter should be entitled to the same relief under their answers as under cross-bills regularly filed, would not authorize relief against other defendants who did not sign the agreement.

4. *Conclusiveness of judgment or decree.*—A judgment or decree on the merits, rendered by a court of competent jurisdiction, is conclusive as a bar, or as matter of evidence, not only of the questions actually litigated, but of all questions within the issues that could have been properly litigated and decided; but not in respect to any matter which is to be inferred from the record by argument; and when the record is relied on as a bar, in a subsequent suit, it must show with reasonable certainty that the questions, though not necessarily within the issues, were actually presented and litigated, or were so included in the issues that their determination was necessary.

5. *Same.*—Under a bill in equity by a creditor, asking the settlement of a deed of assignment, by which the grantors devoted their property thereby conveyed to the payment of debts due by them individually and as partners, a decree being rendered in favor of a creditor who was a defendant, and whose answer was, by agreement, taken as a cross-bill, by which the amount of his debt was ascertained, and payment decreed out of the assigned property; such decree is not conclusive as against the heirs and devisees of a deceased partner, who, though defendants to the former suit, were not parties to the agreement, when the creditor seeks to subject their lands to the payment of his debt.

APPEAL from the City Court of Montgomery, in Equity. Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 22d October, 1883, by Julius B. Trimble, as administrator with the will annexed of Francis Bugbee, deceased, against the surviving executor (Robert C. Fariss) and the children of William B. Fariss, deceased, as his heirs and devisees; and sought to subject certain real estate, which the defendants held under the will of said W. B. Fariss, to the payment of a debt which the said Fariss, at the time of his death, owed to said Bugbee. This debt was evidenced by a promissory note, dated March 14th, 1862, and payable on the 1st April next after date; which note was for $6,000, was signed by said W. B. Fariss and Cyrus Phillips jointly, and was given for money loaned before that time to them as partners by said Bugbee. The firm of Phillips & Fariss had been changed a short time before this note was given, and a new firm formed under the name of Phillips, Fariss & Co., of which said Robert C. Fariss became a partner; but the bill alleged that no change in the character of the debt was effected or intended by the execution and acceptance of said note, and that it still continued the partnership debt of Phillips & Fariss. W. B. Fariss died in 1866, and Robert C. Fariss and said F. Bugbee were duly appointed and qualified

as the executors of his last will and testament, which was duly admitted to probate, his children being legatees and devisees under its provisions. Said executors made two annual or partial settlements, in which, as the bill alleged, they fully accounted for all the assets which had come into their hands, "and which are correct as to the matters embraced therein;" but the said debt to Bugbee was not included or mentioned in either of these settlements. Bugbee died in April, 1877, never having made a final settlement of his accounts as executor of said Fariss; but the bill alleged that he never received any assets of said estate after the last of said partial settlements. His widow was appointed and qualified as his executrix, in May, 1877; and in September, 1883, after her death, letters of administration *de bonis non* were granted to the complainant.

The firm of Phillips & Fariss, at the time of its dissolution, owned certain city lots and other property in Montgomery, and a plantation in Bullock county, called the *Baldwin place*, and owed no other debts than that due to Bugbee. The firm of Phillips, Fariss & Co., their successor in business, acquired another plantation in Bullock county, called the *Germany place*, and became indebted to Mrs. Mary B. Blanton (then Craik), Mrs. E. C. Clements, and others; and after its dissolution, a new partnership being formed, of which Jno. W. McQueen was a partner, said Phillips and Robert C. Fariss became indebted to McQueen and others. Being thus indebted, on the 6th April, 1870, said Phillips and R. C. Fariss executed a deed of assignment to Geo. W. Stone and F. H. Warren as trustees, for the benefit of their creditors; reciting therein the debts of said several firms, the real estate belonging to them, the individual debts of the grantors, and the property owned by them; and directing that the property should be sold, and the proceeds applied "in the same manner, and upon the same principles, as a court of equity would marshal and appropriate the same."—See the provisions of the deed set out in full, in *Hatchett v. Blanton*, 72 Ala. 424.

On the 13th December, 1875, Mrs. Blanton filed her bill in said Chancery Court, against said trustees, said Phillips and R. C. Fariss, the children of W. B. Fariss, deceased, Bugbee, and the other creditors; asking a reformation of this deed of assignment, in the matter of an alleged mistake in describing partnership property as belonging to the partners individually, a foreclosure of the deed by a sale of the property, and the application of the proceeds to the payment of the several debts, partnership and individual, according to the principles of equity. An answer to the bill was filed by Bugbee, as follows: "Respondent admits all the allegations of said bill, ex-

cept only so much thereof as asserts the right of complainant· and E. C. Clements, as creditors of Phillips, Fariss & Co., to share in the assets of the firm of Phillips & Fariss, or that the assets of said firm of Phillips & Fariss are of value more than sufficient to pay the partnership debts: these allegations are denied.  Respondent admits, also, and avers that he is a creditor of Phillips & Fariss, and also of Cyrus Phillips, as alleged in the bill; and that the debts due him by said firm, and by said Phillips, are wholly unpaid."  A guardian *ad litem* was appointed for the children of W. B. Fariss, who filed a formal answer for them; and answers were filed by other defendants. A decree *pro confesso* was taken against R. C. Fariss.  Afterwards an agreement of record was entered into, signed by the solicitors of all the adult parties, as follows : " *Whereas*, Cyrus Phillips has filed an answer and cross-bill in this cause, and F. H. Warren and Geo. W. Stone, trustees, have also filed an answer and cross-bill; and *whereas* the original cause is now at issue as to all the defendants, but neither of the cross-causes is now at issue:  Now, therefore, to expedite the hearing, and save further costs, it is agreed that the defendants, Cyrus Phillips, F. H. Warren and Geo. W. Stone, trustees, *F. Bugbee*, M. C. Talbird and H. C. Talbird, and Geo. W. Nixon as administrator of Jno. W. McQueen, shall each and severally have and be entitled to the same relief, upon their several and respective answers, as upon cross-bills filed by them severally, setting up their respective interests as shown by the original bill and their respective answers thereto ; and that the answer of each of said defendants shall be regarded and held, as against the complainant, and as against each of the above named defendants, as a cross-bill, upon which the defendant making such answer shall be entitled to the same relief as upon a cross-bill regularly filed and at issue by a general denial of all matters not admitted in the pleadings."

The·cause being submitted for decree on pleadings and proof, the chancellor assumed jurisdiction of the trust created by the assignment, and ordered an account to be stated by the register, as to the partnership and individual debts, and the property subject to each ; and on the coming in of the register's report, which was confirmed, rendered a final decree, declaring that Mrs. Blanton "and F. Bugbee as a creditor of Phillips & Fariss," the amount of whose debts was ascertained, "are entitled to relief," and ordering a sale of the city property and the *Germany place* (the other plantation having been already sold by the trustees), and the application of the proceeds of sale to the debts according to the priorities declared. By said decree, the amount of Bugbee's debt, with interest to June 1st, 1877, was ascertained to be $11,481.85, and he was

declared to be the only creditor of the firm of Phillips &
Fariss. This decree was reversed by this court on appeal, at
the instance of McQueen's administrator, and the cause was
remanded, as shown by the report of the case—*Hatchett v.
Blanton*, 72 Ala. 423–38. The city lots in Montgomery hav-
ing been sold by the register under this decree, before its re-
versal, Mrs. Bugbee, as executrix, became the purchaser, and
entered a credit on the decree for the amount of the purchase-
money; but this purchase was set aside, after the reversal and
remandment. The bill in the present case set out the sub-
stance of the proceedings in the former suit, and there is an
agreement of record, signed by the solicitors of both parties,
that the record of that suit may be considered as an exhibit to
the bill. The complainant claimed that his debt, as ascertained
by the decree in that suit, was due and unpaid, except a par-
tial payment of about $2,000 made by said R. C. Fariss as ex-
ecutor; averred that he was the only creditor of the estate of
W. B. Fariss, and asked that the lands devised by him to his
children be subjected to the payment of said debt.

The children of W. B. Fariss demurred to the bill, "because
it shows that complainant's said demand is stale, and because
it is barred by the statute of limitations of six years, and be-
cause the same has been adjudicated against the complainant
in said cause of *Blanton v. Stone & Warren et al.*" The
court sustained the demurrer, "on each of the grounds assigned
therein," and dismissed the bill; and the decree is now as-
signed as error.

TROY, TOMPKINS & LONDON, and PETTUS & DAWSON, for
appellant.—1. The decree rendered in the former suit estab-
lished the amount of the complainant's debt, and its validity
as a claim against Phillips & Fariss, individually and as part-
ners: This suit is founded on that decree, and is prosecuted
against persons who were parties to the former suit. As
against them, the cause of action being the same, the former
decree is conclusive of every defense which might have been
urged in the suit, whether it was set up or not. The infancy
of these defendants, and the fact that no personal decree was
then rendered against them, do not affect the conclusiveness
of the estoppel.— *Coffin v. McCullough*, 30 Ala. 207; *Hender-
son v. Henderson*, 3 Hare, 100, 115; *Aurora City v. West*,
7 Wall. 102; *Davenport v. Bartlett*, 9 Ala. 179; *McDougald
v. Rutherford*, 30 Ala. 253; Freeman on Judgments, §§ 23–30,
249, 254; *Bigelow v. Windsor*, 1 Gray, 299; *Preston v.
Dunn*, 25 Ala. 307; *Johnson v. Everett*, 9 Paige, 636; *Watt
v. Watt*, 37 Ala. 543; *Hutton v. Williams*, 60 Ala. 107;
*Waring v. Lewis*, 53 Ala. 615; *Cromwell v. County of Sac*,

[Trimble v. Fariss.]

94 U. S. 356; *Steam Packet Co. v. Sickles*, 24 How. 341; *Brunhild v. Freeman*, 80 N. C. 212: *Warehouse Co. v. Jones*, 62 Ala. 550; *Mayor v. Wharf Co.*, 63 Ala. 611.

2. The statute of limitations is no bar in this case. The note was merged in the decree, and this suit is founded on the decree, which is a new debt.—Freeman on Judgments, §§ 216, 217. But the note was not barred at the death of W. B. Fariss, or at the time Bugbee became his executor; and not being able to sue himself, the statute of limitations did not run against him. The debt was merged by his appointment and qualification as executor, and his right of retainer could only be exercised on a settlement of his accounts. There is no distinction between real and personal property, in its liability to the payment of debts, except that the personalty must be first exhausted. The right of retainer exists as to each kind of property, and an executor may retain his debt out of the proceeds of land sold.—2 Kent's Com. 427; *Livingston v. Newkirk*, 3 Johns. Ch. 312; 1 Story's Equity, § 522a; *Prentice v. Dehon*, 10 Allen, 353; *Calhoun v. Fletcher*, 63 Ala. 580; *Nelson v. Murfee*, 69 Ala. 603; *Clark v. Knox*, 70 Ala. 607; *Spencer v. Spencer*, 4 Md. Ch. 369; *Brown v. Stewart*, *Ib.* 456; 1 Gill, Md. 32; *Hicks' Appeal*, 2 Penn. St. 280; *Sims v. Sims*, 30 Miss. 341; 2 Wms. Executors, 894; *Kent v. Pickering*, 2 Keene, 1; 2 W. Bla. 965; 3 Burr. 1380. There has never been a final settlement of the accounts of the executors, and the debt can not be barred until an action to compel a settlement is barred. The bill avers, also, that there was a partial payment of the debt in 1878, by a conveyance of lands in Shelby county by the surviving executor.—*Scott v. Ware*, 64 Ala. 184.

GUNTER & BLAKEY, *contra*.—Is there any limit to the period within which an executor, who was a creditor of the testator, must institute proceedings to subject the lands to the payment of his debt? In this case, the complainant's debt matured in 1862; the debtor died in 1866, and the creditor qualified as his executor; and on his death in 1877, not having retained for his own debt, his executrix qualified, and continued in office for more than six years, without any effort to subject the lands to the payment of the claim now asserted against the heirs. That an executor may retain his own debt out of any personal assets that come into his hands, and that he may pay, out of those assets, a debt barred by the statute of limitations, are propositions well settled on principle and authority. But he has no estate or interest in the lands descended or devised; and when he attempts to exercise his statutory powers to subject them to sale, or when the creditor

[Trimble v. Fariss.]

himself attempts to subject them to the satisfaction of his debt, the heirs or devisees may plead the statute of limitations, or set up any other defense which would be available to the decedent himself if living.—*Teague v. Corbitt,* 57 Ala. 529; *Miller v. Irby,* 63 Ala. 484; *Scott v. Ware,* 64 Ala. 174; *Steele v. Steele,* 64 Ala. 438.

CLOPTON, J.—There can be no question that, when a proceeding is instituted by the personal representative, or by a creditor of the decedent, to sell descended or devised lands for the payment of debts, the heir or devisee may interpose any defense which would have availed the intestate or testator, if living and sued on the debt, or which the personal representative could have interposed if sued at law. If the claim is barred by the statute of limitations at the time the proceeding is commenced, the defense is available to the heir or devisee, notwithstanding any intervenient act, admission, or omission of the personal representative. When suit is brought against the executor or administrator, on a debt owing by the decedent, before the statute has perfected a bar, the demand is merged in the judgment, if any is rendered, and it becomes a valid subsisting claim until barred. But a judgment, founded on a claim that was barred by the statute of limitations at the time of the suit against the personal representative, does not preclude the heir or devisee from successfully interposing a plea of the statute.—*Steele v. Steele,* 64 Ala. 438; *Scott v. Ware,* 64 Ala. 174; *Bond v. Smith,* 2 Ala. 600.

The general rule is not controverted; but it is insisted that it has no application in a case where the personal representative is a creditor of the decedent at the time of his death—that in such case the debt due to the executor or administrator is merged by his appointment and qualification, and since he is the same person to pay and receive, and can maintain no action for the recovery of his debt, the statute of limitations does not run, and his only remedy is his right of retainer on a settlement of his accounts.

The common-law right of retainer by a creditor, who becomes the personal representative of the estate of his debtor, though not abrogated, has been materially modified by the operation of our statutes, restricting the rights and powers of an executor or administrator, and governing the administration and settlement of estates. At common law, an executor or administrator has a right to retain out of legal assets for a debt due to him from the deceased, in preference to all other creditors of equal degree. The remedy is created by the operation of law, and rests on the principles, that the creditor who first commences suit is entitled to preference in payment, and as

[Trimble v. Fariss.]

the executor or administrator can not sue himself, unless he has the right to retain, he would be subjected to the loss of his own debt, where the estate is insolvent. In 2 Wms. on Ex'rs, § 1040, it is said: "Thus, from the legal principle of the priority of such creditor as first commences an action, the doctrine of retainer is a natural deduction." Under our statutes, an executor or administrator has no right to pay one creditor in preference to other creditors, there being no prior existing lien in his favor; and the legal principle of priority, which existed at the common law, does not prevail. The policy of our law is equality between creditors; and a carefully organized system for the settlement of insolvent estates has been provided by statutes, by which the creditors of the deceased share, *pari passu*, in his assets, real and personal. An administrator of an insolvent estate, having a claim which originated in the life-time of the deceased, is required, as other creditors, to file such claim in the mode, and within the time prescribed by statute, or it is barred. When his claim is filed as provided by statute, it is open to contest by the other creditors, or by the heirs of distributees; and if allowed, he is entitled to receive only his ratable proportion of the moneys of the estate applicable to the payment of the general debts; which he may retain, because a judgment in his own favor can not be rendered against him; but he does not retain by his own volition, or as the mere act of the law. The amount to which he is entitled is judicially ascertained, and he is allowed to retain it by the order or decree of the court. In cases of insolvent estates, the common-law right of retainer is incompatible with the provisions of the statutes.

At common law, the personal representative was vested, not only with the legal title to the personal assets of the deceased, but also with the absolute power to alien or dispose of them. Neither creditors nor distributees could pursue them in the hands of his alienee, in the absence of collusion or bad faith. He was authorized, without any license or order of court, to make absolute sale, and pass the absolute title. Having the power of alienation or disposition, and having the privilege of paying his own debt in preference to other creditors of equal degree, whether the estate was solvent or insolvent, when personal assets came into his possession sufficient to pay his debt, which could be legally applied to its payment, the law, *eo instanti*, made the application, and the debt was thereafter regarded as extinguished. "Because," as is said in *Woodward v. Darcy*, Plow. 185, "in judgment of law, he is satisfied before; for, if the executor has as much goods as his own debt amounts to, the property of these goods is altered, and vested in himself—that is, he has them as his own proper goods, in

satisfaction of his debt, and not as executor; so that there is a transmutation of property by operation of law." While the personal representative is vested with the legal title to all the personal assets of the decedent, and has the same power of disposition and transfer of the *choses* in action which he possessed at common law, no transmutation of property, as to the tangible, visible, personal property, the proper subject of sale, can occur by operation of law, under our statutes. The statutes prohibit an executor or administrator from selling or disposing of such property, otherwise than by sale under an order of the Probate Court. While all the personal assets, not exempt from the payment of debts, may be legally applied to their payment, the personal representative has no power to thus apply the tangible, visible property, without first converting it into money by authority of the court. The right of retainer extends only to the assets which are in such form and condition that he can legally apply them directly to the payment of debts, and pass the title and ownership.

On the death of a person, the legal title to his lands immediately descends to his heir, or passes to the devisee, as the case may be. No privity of relation, in respect to the real estate, exists between the heir or devisee and the personal representative. He is, by statute, clothed with powers and charged with duties in reference to the lands, but takes no title or estate. These powers he must exercise in the mode, and for the purposes prescribed by the statutes. The heir or devisee's right of possession, use, and alienation is subject to these powers, but is not intercepted, until the personal representative exercises, or takes steps to exercise, his statutory power to rent or sell. The executor or administrator has no authority, other than as conferred by statute, to interrupt the rights, or divest the title of the heir or devisee. By statute, the lands of a decedent are charged with the payment of his debts, when the personal property is insufficient, and constitute legal assets; but they do not come into the possession, or under the control of the personal representative, except by and until the exercise of his statutory powers. If he rents them, the rent, and if he sells under an order of the court the proceeds of sale, are assets. To the moneys arising from the rent, or a valid sale of lands, the right of retainer may extend, but not to the lands as such.

As the doctrine of retainer relates to such assets only as the executor or administrator may legally apply to the payment of debts, without change of their shape or condition, and which may, by operation of law, become his own property on such application being made to his own debt, it logically follows, that he is not entitled, on the final settlement of his accounts in the Court of Probate, to the remedy of retainer for a debt

[Trimble v. Fariss.]

due him, out of personal property remaining in *specie*, which can be sold only under an order of court, or out of lands unsold. On such settlement, he may charge the estate with the amount of his debt as paid by him; and on the ascertainment of a balance due him, a decree may, under the statute, be rendered in his favor against the administrator *de bonis non*, if any, to be collected as like judgments in favor of other creditors; and if he makes final settlement and distribution, without having first converted a sufficiency of the property into money to pay his debt, he is without remedy by his own *laches.*—Code of 1876, § 2539; *Moore v. Lesueur*, 33 Ala. 237.

In *Knight v. Godbolt*, 7 Ala. 304, it was held, that an administrator is entitled, on final settlement, to show a retainer of assets for a debt due himself, though within the bar of the statute of limitations, but without the period of time when the presumption of payment arises; and such is the general rule. The principle on which the rule rests is, that an administrator is under no legal duty to plead the statute of limitations, and a failure to interpose the defense will not operate to deprive him of a credit for the amount of a judgment recovered against, and paid by him, though the demand on which the judgment is founded was barred when the suit was commenced, unless there is collusion or bad faith in suffering the judgment; and that it is unreasonable that an administrator should have the power to charge the estate with a debt due to another, though within the bar of the statute, and yet be remediless as to his own. The rule applies only when the administrator is accounting for personal assets, which he may charge by omitting to plead the statute, or by reviving the demand by an express promise in writing. It has no application to the real estate, on which the administrator can create on such charge. In *Teague v. Corbitt*, 57 Ala. 529, where the administrator claimed a credit for the amount of a judgment recovered against him, which was founded on a demand within the bar of the statute, and to reimburse him the payments made by him on the judgment it was necessary that he be allowed to retain from the assets in his hands arising from the sales of descended lands, made under decrees of the Probate Court, it was held that "the money for which the lands were sold, as to the heirs, and as to all questions of charge or liability, or of descent or succession, must be regarded as a substitute for the lands;" and that the heir could protect himself against the claim of the administrator to retain from the real assets, by showing that the demand on which the judgment is founded was, at the time of the commencement of the suit, barred by the statute of limitations. It may be conceded, that an executor or administrator will be allowed to retain, on the final set-

tlement of his accounts, for a debt due him, out of any property to which he has title, and which may be legally appropriated to its payment, though other legal remedies for its collection are barred, on the same principle that the court will not deprive a person of property held by him in trust, without reimbursing him for any expenditures made on account of the trust estate. But the personal representative has no estate in, or title to lands descended or devised, and no trust attaches to them, at least until he assumes possession and disposition by his statutory authority. The reason on which is rested the necessity of protecting an executor or administrator, by allowing him to retain for a debt due him from the personal assets, does not apply when he seeks payment from the real assets.

As counsel have pressed on our attention with ability the right of retainer, as supporting the proposition, that a debt to the executor can not be barred until an action to compel a settlement of his administration is barred, we have considered the doctrine in relation to the estates of decedents under our statutes, for the purpose of showing its inapplicability to the case made by the present bill. We do not understand, however, that the complainant's title to relief is founded by the bill on the right to *retain* from the lands for the debt due to his testator. It alleges, substantially, that Francis Bugbee, the testator of complainant, was one of two executors of the estate of William B. Fariss, who were appointed and qualified in 1866. Bugbee continued to act as such executor until April, 1877, when he died. Fariss, at the time of his death, was indebted to Bugbee, by a note payable April 1, 1862. During the period Bugbee was executor, he and his co-executor made two annual or partial settlements, without retaining for his own debt, in which settlements they accounted for all the assets which had come into their hands; and no final settlement has ever been made. The bill was filed October 22, 1883, by complainant as administrator with the will annexed of Bugbee, against the surviving executor and devisees of Fariss, to subject the devised lands to the payment of the debt due by Fariss to Bugbee. At the time of Bugbee's death, his term as executor ceased. His executrix was appointed and qualified in May, 1877; and more than six years expired after her appointment before the bill was filed. In neither of the annual settlements made during his life did he claim the right to retain for his debt, and no final settlement has been made, whereby the remedy by retainer could be resorted to. The bill is filed by complainant, not for a final settlement of his administration, but as a creditor, claiming and seeking to subject the lands to the payment of the debt. Where the executor has in his hands assets to which he has title, and which

may be legally applied to the payment of his debt, the law makes the application, and his debt is extinguished. He can not claim his debt, in his capacity of creditor, as a subsisting demand. The complainant, therefore, may be regarded as having waived the right of retainer, if there was any, and as having elected to proceed on his rights as creditor, and not in the character of executor. The question raised is, can the devisees, under these circumstances, protect themselves against the claim, on the ground that it is barred by the statute of limitations? Another question arises, as to whether the devisees are concluded by a decree in another suit, which will be considered hereafter.

Conceding that the executor, on account of its incongruity, could not sue himself, nor his co-executor, and obtain a personal judgment, and that for this reason the running of the statute of limitations must be regarded as suspended, so far as it affects the charge on property subject to levy and sale under execution on such judgment, if it were in favor of another creditor; the suspension does not extend beyond the scope of the necessity. His relation to the lands and devisees as executor presented no legal obstacle to the institution of the statutory proceeding to sell the lands for the payment of the debts, which, there being no power in the will to sell for the purpose, he was expressly authorized to institute, and which it was his duty to institute if the personal property was insufficient. Such proceeding is a suit by the executor, to which the devisees are the adversary parties. In *Steele v. Steele, supra*, speaking of the power of the personal representative to divest or incumber the title to the realty, it is said: "Until he takes possession, sells under a power conferred by the will, or begins the exercise of some one of the statutory powers, under which he may obtain an order of sale, he has done nothing to which the heir or devisee is a party, or by which they can be concluded. He may revive a debt by partial payment, or promise; he may submit to a recovery of judgment. These are not the acts of the heir, for in these respects he is not their representative. They do not derive their title through him. All he may do or suffer, as affecting their landed estates, is *res inter alios acta;* and when an effort is made by the personal representative, or another, to intercept the descent, and appropriate the lands to the payment of the alleged debts of the ancestor, the heirs or devisees for the first time become parties to the record; and they then come into court with all their rights of defense unimpaired. They bring with them the same rights to plead, call for proof, and make defense, as if no litigation had preceded." The statute of limitations is not suspended against the devisees, because of the creditor be-

ing the executor, as to a proceeding to subject the lands to the payment of his debt. The realty of a decedent is not subject to sale under an execution on a judgment against the personal representative. A separate and distinct proceeding is requisite to sell the lands. As the personal representative can not extend the period of the statute by partial payment, or promise in writing, or suffering judgment—by no positive act—so as to charge the real assets; *a fortiori*, he can not keep alive and continue in force his debt, so as to charge the realty by *laches*, or negligence—by mere passiveness—in commencing the proper proceeding for the purpose.—*Miller v. Irby*, 63 Ala. 477. The complainant is not seeking to collect the debt out of the estate, the title to which is vested in his testator for the payment of debts, or out of which he is entitled to retain the amount; but he comes into a court of equity, like any other creditor, to collect the debt out of an estate to which his testator had no right or title as executor. When the executor has failed, or is unable to satisfy his debt out of the personal estate, and out of which he might have retained it, and then comes into a court of equity to subject the lands, which have passed to the devisees, no sufficient reason exists why they may not set up the defense of the statute of limitations, the same as if the claim was due to some person other than the executor. The fundamental difference is, that the title to the personal estate is in the executor or administrator for the payment of debts and distribution, and the title to the real estate is in the heir or devisee, and it can be subjected to the payment of debts only by some distinct mode authorized by law. In such cases, the devisees may successfully interpose any defense, which their testator could have interposed, if living, or which they could have interposed, if the bill had been brought by any other creditor, the executor having no greater or other rights.

It is further insisted, that the decree in the former suit of Blanton against Warren and others is conclusive on the rights of the devisees, and fixes their liability to complainant. The general rule, invoked by appellant, can not be questioned. A judgment or decree, rendered by a court of competent jurisdiction on the merits, is conclusive, either as a bar, or as matter of evidence, not only of the questions actually litigated, but of all questions within the issues, that could have been properly litigated and determined. " The court requires the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part

of their case."—*Henderson v. Henderson*, 3 Hare, 100. Where the record is relied on, it must appear, not as matter of inference, but with reasonable certainty, that the questions involved in the subsequent suit were litigated and decided in the former suit, either by having been actually presented and litigated, though not necessarily within the issues, or so included within the issues, that their determination was necessary to the judgment or decree.—*Strauss v. Meerteif*, 64 Ala. 299.

The bill in the former suit was brought by Mrs. Blanton for a two-fold purpose: first, to enforce the trusts created by an assignment made in 1870 by Phillips and Robert C. Fariss, for the benefit of the partnership creditors of Phillips & Fariss, and Phillips, Fariss & Co., and of the separate creditors of Phillips; and as auxiliary thereto, to subject to the payment of her claim the undivided interest of William B. Fariss in the real estate which had passed to the devisees; and, second, to subject to the partnership debts the undivided interest in certain real estate, as partnership property, which Phillips had assigned for the payment of his individual debts.—*Hatchett v. Blanton*, 72 Ala. 423. William B. Fariss was a member of both firms. Bugbee, the devisees of William B. Fariss, Robert C. Fariss, and the other creditors provided for by the assignment, were made defendants, but neither of the executors of William B. Fariss was made a party in his representative capacity.

Conceding that the frame, purpose, and issues of the original bill were broad enough to require the devisees of Fariss to bring forward any and all defenses they might have to the claim of Mrs. Blanton, and that a decree in her favor subjecting to the partnership debts of Phillips, Fariss & Co. their entire interest in the real estate, which was their partnership property, is conclusive on the devisees; it is clear that, on the original bill and the mere answer of Bugbee, no decree could have been rendered in his favor subjecting the devised lands to his debt. One defendant can not set up an interest adverse to another, without becoming an actor. Bugbee could have obtained no active relief against the devisees of Fariss, except by a bill of his own.—*Cullum v. Erwin*, 4 Ala. 452. No issue in respect to the debt due Bugbee by Phillips & Fariss, as a subsisting demand against the estate of Fariss, was presented by the original bill, which called on the devisees to plead or answer to the same. It is true there is an agreement in the record, that the answers of some of the defendants, including Bugbee, should be taken as cross-bills, and that they should be severally entitled to the same relief against the complainant and the defendants who signed the agreement, as upon cross-bills setting up their respective interests; but the devisees of

18

Fariss were not parties to the agreement. The amount due Bugbee by Phillips & Fariss was a fact, the ascertainment of which was necessary and preliminary to the proper distribution of the proceeds arising from the sale of the assigned property. Its ascertainment by the register under the decree of reference on the original bill, and the confirmation of his report by the court, can not be regarded as an adjudication that it is a valid subsisting claim against the estate of the deceased partner, but as the amount which Bugbee was entitled to be paid under the assignment, out of the proceeds of the *assigned* undivided interest of Phillips in the partnership property.

If it were conceded, that the confirmation of the report by the register is a judicial determination of the amount due by Phillips and the estate of Fariss, it has not the force of a personal judgment against the devisees, and was not accompanied with an adjudication that the devised lands are subject to its payment: otherwise the present bill would have been unnecessary. If the question now involved were within the issues in the former suit, the rendition of a decree for the sale of the undivided interest of Phillips in the real estate, coupled with a failure to decree that the lands which passed to the devisees are subject to the payment of the debt, and directing their sale, may be regarded as an adjudication of their non-liability. If not within the issues, when a subsequent suit is brought to subject the lands, the devisees may protect themselves by interposing the defense of the bar of the statute of limitations. The record of a former judgment or decree is not conclusive, as evidence or bar, in respect to any matter which is to be inferred by argument from the record.—*McCravey v. Remson*, 19 Ala. 430.

Affirmed, and cause remanded, for such further proceedings as complainant may be advised.