[McRae's Administrator et al. v. McDonald.]

# McRae's Adm'r *et al. v.* McDonald.

*Bill in Equity for an Injunction, and to Vest the Title to Lands in Purchaser.*

| 57 | 423 |
| .125 | 433 |
| 57 | 423. |
| 128 | 566; |
| 57 | 423 |
| 131 | 131 |
| 57 | 423 |
| 139 | 452 |

1. *Administrator's right to maintain ejectment for testator's lands.*—In this State, an executor or administrator may maintain ejectment for the recovery of lands of which the testator died seized, and is entitled to recover, notwithstanding the testator had given bond for title and put the purchaser in possession.

2. *Bill to enjoin ejectment; necessary averments and proof.*—A bill to enjoin an action of ejectment, brought for the recovery of lands, can not be maintained, unless payment of the purchase money in full, or tender and refusal, is proved as alleged.

3. *Same; burden of proving payment.*—The burden of proving such payment rests on the complainant, and when the validity of the payment depends upon the authority of the person who received it, the complainant must also show the rightfulness of the payment to him.

4. *Testimony; what does not overcome positive denial.*—The slightly confirmed testimony of a witness, to whom complainant made payment of a note, that he, witness, held such note for collection, does not overcome the positive denial of executors, to whom the note was payable, that he had no authority to collect it.

5. *Purchase-money notes; when not competent as evidence; hearsay.*—Notes not shown to be in the handwriting of the purchaser, and not identified as those given for the purchase-money of land, are not competent evidence to show payment of the purchase-money, on the testimony of the deceased purchaser's wife, that he delivered the notes to her after taking them up, her knowledge as to their payment being derived from hearsay.

6. *Bill dismissed without prejudice; the reason.*—In this case there were certain credits, &c., which were not evidence, because the signature purporting to be that of one of the executors, acknowledging credits, was not proved. While disregarding this testimony in rendering its decree, the court felt it incumbent to remark, that had there been proper proof of the handwriting made, &c., the exhibits would have been strong proof to show payment, and accordingly dismissed the bill without prejudice.

7. *Will with power of sale; when proceedings in Probate Court are void.* Where the will authorizes a sale of lands for certain purposes, proceedings had in the Probate Court on the application of the executors for an order of sale, for the purpose of discharging the duties required by the will, are mere nullities; but the sale will stand as an execution of the power conferred, as the order and petition both show that the rule was made under the power of the will.

8. *Intention to execute power of sale; when sufficiently appears.*—It is not necessary that the intention to execute a power of sale should expressly appear upon the face of the instrument; it is sufficient that it appear by words, acts or deeds, clearly demonstrating that intention.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. B. B. McCRAW.

This was a bill filed by Daniel McDonald *et als.* against the heirs, and William C. Bostwick, administrator of the heirs;

of Farquahar McRae. Its purpose was, *first*, to enjoin said Bostwick from proceeding in an ejectment suit brought by him as such administrator, in the Circuit Court of Barbour county, to recover lands of which said McRae died seized; and *second*, to have the title to certain lands divested out of the heirs and legatees of said McRae and vested in the purchasers.

It appears that on the 11th of December, 1858, said McRae died, leaving a will, in which he appointed his three sons executors, giving them power to sell a "plantation" in one body, on a credit of one, two and three years, with interest from the day of sale, the purchaser giving notes with approved security, in three equal installments, titles to be made upon the payment of the last installment. Said plantation was sold by said executors, who, notwithstanding the power in the will for them to sell, proceeded in the Probate Court and obtained an order therefor. One Archibald D. Campbell became the purchaser, and executed his notes therefor as provided in the power of sale in the will. On the 20th of September, 1859, said Campbell sold a part of said plantation to Daniel McDonald, complainant and appellee, and Campbell and wife made a warranty deed of said portion to said McDonald. Said Campbell sold another portion of said plantation to one Mathis Jones, who afterwards conveyed the same to one Cornelius Ferrer. It is alleged in the bill that all of the purchase-money in these cases had been paid. The testimony on this point is fully discussed in the opinion, and need not be noticed here.

After the death of one of the sons and executors of said McRae, the other two executors resigned, and William C. Bostwick was appointed administrator *de bonis non* of the estate of said McRae, and as such administrator, he brought suit in ejectment, as aforesaid, the further progress of which suit the bill seeks to enjoin. All of the evidence, material to the points decided, is noticed in the opinion.

The cause being submitted on the pleadings, evidence &c., for final decree, the chancellor adjudged that the injunction prayed for in the bill be made perpetual, and the titles to all of the lands described in the bill be divested out of the heirs and legatees of said McRae, and that the complainant, Daniel McDonald, be invested with title to that portion which the bill alleges he bought from Campbell, deceased; and that the heirs of Cornelius Ferrer, deceased, be invested with title to that part which is alleged to have been sold to said Mathis Jones, and by said Jones to Cornelius Ferrer;

and that the heirs of said Campbell be invested with title to the remaining portion of the land bought by Campbell, and not sold to said McDonald and Jones.

The respondents to the bill now assign as error the decree of the chancellor.

J. L. Pugh, for appellants.

Seals & Wood, *contra.*

No briefs came to Reporter.

Stone, J.—1. In this State, an administrator or executor may maintain ejectment for the recovery of lands, of which the intestate or testator died seized.—Rev. Code, § 2216; 1 Brick. Dig. 625, § 6. A bond for title, or any other evidence of sale before title conveyed, although coupled with possession, is but an equitable title, and will neither support or bar a recovery in ejectment.—1 Brick. Dig. 627, §§ 33, 34, 35, 36.

2. The bill in the present case was filed to enjoin the action of ejectment brought for the recovery of the lands, and to have title divested out of the heirs of McRae, the vendor, and vested in the purchasers. It alleges that all the purchase-money had been paid. This is a very material averment in this cause, and without its establishment, the complainants can not recover. The answers put this averment in issue. The testimony on this question is conflicting. McKenzie testifies that one of the notes was left with him for collection by John L. McRae, one of the executors; that he did collect it, and paid over the money to McRae. McRae testifies that he left the note with McKenzie only for safe keeping, with instructions not to receive Confederate money in its payment. Mrs. Campbell testifies that the notes were paid by her husband, and that he gave them to her for safe keeping; and she produces what purport to be the notes. There is, however, no testimony of the handwriting, or other evidence identifying them as the notes given for the purchase of the lands. She says she never saw the notes until they were handed to her by her husband. The production of these notes by her, if their identity or execution was shown, would be strong evidence for complainants. We think, however, that Mrs. Campbell, in her testimony, shows that she is speaking of transactions not within her personal knowledge. Hence, we can not regard what purport to be the notes, as legitimately in evidence. McKenzie says nothing positive on the ques-

tion of his authority to receive Confederate money, but contradicts McRae in this, that he says the notes, at Campbell's request, were left with him, McKenzie, for collection. Even if the genuineness and identity of the notes were shown, would their production by Mrs. Campbell, under the circumstances proved, without more, make a *prima facie* case of payment? It should be observed that the question in this case is not whether McKenzie received the Confederate money and surrendered the note to Campbell. That does not appear to be disputed. Had he authority to collect?

The chancellor did not decide the question of payment, but ruled, in effect, that that question, in this proceeding, was immaterial. In this he erred. The administrator, as we have shown, had a clear right to recover the lands in ejectment; and, in the absence of full payment of the purchase-money, or tender and refusal, the complainants in this suit,. not having done equity, were not entitled to an injunction,. or to a decree for title.—*Tonig v. Moore*, 4 Stew. & Por. 347 ; *Kizer v. Lock*, 9 Ala. 269; *Brewer v. Brewer*, 19 Ala. 481; *Pulliam v. Owen*, 25 Ala. 492; *Bell v. Thompson*, 34 Ala.. 633; *Gentry v. Rogers*, 40 Ala. 442.

3–4. The question of payment *vel non* of the purchase money being the material issue of fact in this case, it becomes our duty to inquire if the complainants have proved their averment. The burden of its proof was on them. Giving due weight to all in this record that can be regarded as testimony, we feel constrained to hold that it is insufficient to establish this most material averment of payment in full. The question of McKenzie's authority to collect, rests alone on the irreconcilable testimony of himself and John McRae. McKenzie affirms that he had the note for collection; McRae denies this with emphasis, and with great particularity; and in this he is somewhat corroborated by Harvey McRae, his co-executor. The slight confirmation given to McKenzie by Mrs. Campbell, is not sufficient to produce conviction against the testimony of the two McRaes. Moreover, there is no proof in the record of payments of the second and third notes,. except the one thousand dollars paid in a check, and the three sums of $1,500, $1,231.75 and $434 paid McKenzie ;. aggregate, $3,165.75. The amount, with interest, then due on the two notes of $1,903 each, was over five thousand dollars. The balance remains unaccounted for. This is fatal to the present bill for specific performance.

5. It results from what is said above that the decree of the Chancery Court must be reversed, and the bill dismissed..

There are some indications in the record, however, which, though not evidence, we feel it our duty to notice. Attached to Mrs. Campbell's deposition are three papers, marked Exhibits D, B and A. Exhibit D purports to be a receipt, signed John L. McRae, Executor, for a check on "Bank of Eastern Alabama" for one thousand dollars, received of A. D. Campbell, "to be credited on notes against him in favor of the estate of F. A. McRae, deceased." In his deposition, John L. McRae says : " I also received a check from A. D. Campbell, drawn on Tom Cannon, of Eufaula, Alabama, for one thousand dollars." The record contains no evidence that shows, or tends to show, that the signature, " John L. McRae," to the receipt, is in his handwriting. The same is true of what purport to be credits on the notes hereafter referred to. No notice is taken of the receipt above, or of the credits on the notes, in the note of the testimony. If the signature to the receipt be that of John L. McRae, and if there be no explanation of it, it tends strongly to show that the check he received from Campbell was drawn on the Eastern Bank of Alabama, and not on Tom Cannon.

Again, the record contains what purports to be credits, signed " Jno. L. McRae," on the two notes of $1,903.33 1-3 each. If his handwriting to these credits were proved, they show that said McRae himself collected the whole of the note second due, and that he entered a credit of $392.85 on the note third and last due. They show further, that the very day after he received from Campbell the check for $1,000 on the Eastern Bank of Alabama, he entered a third and last credit of $607.15 on the note second due, and the above credit of $392.85 on the note third due. Now, it so happens that these two sums—$607.15 and $392.85—make precisely $1,000. It is difficult to conceive a motive for dividing this payment into two credits, except that it overpaid the second note, by the sum credited on the third. Yet, John L. McRae testifies that he left " these notes " with McKenzie for " safe keeping," and that when he testified— April, 1871—the amount due from Campbell, " not counting the $1,000 in Confederate money paid by Tom Cannon, was two notes of $1,903.30 each, with interest on them from day of sale."

6. If this record contained evidence that the said receipt and the said credits are signed in the proper handwriting of John L. McRae, we would hold that they so far corroborate and supplement the testimony of McKenzie and Mrs. Campbell, and so far weaken the testimony opposed to them, as to

justify us in finding that the purchase-money has been paid in full. For these reasons we will dismiss this bill without prejudice.

7–8. We agree with the chancellor that the facts shown in this record sufficiently refer the sale to the power contained in the will to uphold the sale. The petition for the order of sale avers " that the will of said deceased, which has been duly probated, confers on said executors powers to sell said lands for certain purposes therein expressed, and that in obedience to the powers conferred by said will, and the requirements of the same, they make this their petition to your Honor to grant an order to sell said lands for the purpose of discharging the duties required by said will," &c. The witnesses examined in support of the petition testified that the will contains a power to sell the lands. It scarcely need be said that this whole proceeding was nugatory and void. It did not, however, vitiate the sale, which was valid without it. "It is not necessary that the intention to execute a power shall appear by express terms or recitals in the instrument. It is sufficient that it shall appear by words, acts, or deeds, demonstrating the intention."—2 Sto. Eq. Ju. § 1062 *a*, note. In this case the petition and order were to sell for the purpose of discharging the duties required by the will, in obedience to the powers conferred by said will. The order being to sell under the powers of the will, any sale made under it must of necessity be a sale under the powers of the will.

Reversed, and bill dismissed without prejudice.