# Morris *et al. v.* Morris.

*Bill in Equity for Final Settlement of Executor.*

1. *Sale by, and purchase from executor; estoppel.*—An executor and purchaser from him are estopped, so far as they are personally concerned, from controverting the legality of their own sale and purchase.

2. *Same; what not necessary inquiry.*—Where a bill does not seek to set aside sales made by an executor, but, on the contrary, ratifies and confirms them, the court need not inquire whether such sales were or could have been made under powers contained in the will, or under orders of the Probate Court.

3. *Bill to recover legacy from executor; proper parties defendant.*—Where a bill seeks primarily and mainly to recover of an executor and his sureties, a legacy, the executor, his sureties, and the other legatees under the will, are necessary parties defendant.

4. *Money in circulation during the war; judicial knowledge.*—The court takes

[Morris et al. v. Morris.]

judicial knowledge of the fact, that during the prevalence of the late civil war, neither gold, silver, nor United States money circulated in Alabama; but that during said war, until the downfall of the Confederacy in 1865, Confederate States treasury notes, and their convertible equivalants, composed the only circulating medium.

5. ' Sale by personal representative for Confederate money; when no devastavit committed.—Where a personal representative, in good faith, received Confederate money in the course of administration, he did not thereby commit a devastavit, or incur a greater liability than to account for the honest and faithful administration of the same.

6. Multifariousness; what is not.—Where a bill contains a feature in which there is no equity, all the averments in that connection will be treated as redundant, and they will not make the bill multifarious.

7. Necessary proofs; failure to make.—T. W. was entitled to one-eighth of testator's estate, but died leaving three children, of whom complainant is sole survivor, the other two children having died at the ages respectively of 14 and 12; bill was filed by the survivor, seeking to recover the entire one-eighth, which fell to him and the other two children, the averment being that the other two died leaving no debts: Held, 1. Such averment is very material to complainant's right to recover the interests of the two deceased children. 2. That without proof sustaining said averment, the complainant can only recover the one-third interest of the one-eighth which would have fallen to his father.

8. Guardian ad litem; written acceptance of, not necessary—In proceedings in the Probate Court, written acceptance of appointment as guardian ad litem is not necessary. It is enough if the record shows that he did accept and serve.

9. Final settlement of executor and decree of Probate Court; failure of record to show.—This court feels bound to hold, that the record in this case fails to show a valid final settlement and decree, so far as the present complainant and his brother and sister are concerned. As to their interests it names no person as plaintiff; hence the present proceeding must be treated as an application to recover the one-third of the one-eighth, as stated in 7th head-note, supra.

10. Executor may retain money due him; when claim too small for chancery jurisdiction. —Where the entire debt due an estate from the executor amounted to $2,850, and his legacy and commissions were $2,800, he was authorized to retain the amount due him out of the $2,850, leaving him to account for the small residuum of $50; and where the complainant is entitled to only 1-24 (⅛ of ⅛) of such residuum, his claim is too small for chancery jurisdiction.

11. Faithful administration by executor, of Confederate funds.—Where an executor had in hand, in 1864, nearly one thousand dollars Confederate currency, in trust for complainant, who was a minor residing in Texas, where the executor could not reach him, and the will directed the executor to retain it, and there is no averment or proof that he could have invested it with profit, and it became valueless in his hands at the close of the war and before he could obtain access to complainant, and the identical money was deposited in the Probate Court by the executor, where it now remains, and he dealt the same way with his own funds,—such facts present a strong case of faithful administration.

APPEAL from Chancery Court of Perry.

Heard before the Hon. CHARLES TURNER.

The bill in this cause was filed on the 11th of February, 1873, by James B. Morris, appellee, against William G. Morris and others, appellants, to compel the settlement of the administration of said William G. Morris, as executor of the estate of one Thomas N. Morris, deceased, and to enforce, in favor of complainant as against defendant, John Chapman, a lien for the purchase-money of certain lands, purchased by

him of the executor, and alleged to have been paid for in Confederate money.

There were several demurrers to the bill, which were over-ruled.

Upon final hearing, the Chancellor rendered his decree as follows : "The court is of opinion that the complainant is entitled to the relief prayed for in his bill. And, it appearing that, as against this complainant, there has been no valid final settlement of said estate, it is ordered that this court do, and it hereby does, assume jurisdiction of the final settlement of said estate, so far as the interest of the said complainant therein is concerned. And to this end it is ordered, adjudged and decreed, that it be referred to the register of this court to take and state an account between William G. Morris, the executor of said estate, and said estate, in which said account the said register will charge said executor with the value, in good money, on the 7th day of April, 1863, of the personal property of said estate by him on that day converted into Confederate currency, allowing him all just and proper credits. And the said register will also state an account of what is due from John H. Chapman for the purchase-money of the real estate mentioned and described in the bill."

The overruling of the demurrers, and the final decree of the Chancellor, are now assigned as error.

E. W. PETTUS, and W. B. MODAWELL, for appellants.—1. Appellant is entitled to credit for all the Confederate money he received, because he carried out the terms of the will and acted with prudence and good faith, and exercised diligence, and his acts were in no wise hostile to the national authority.—3d head-note in *Pitts v. Singleton*, 44 Ala. 363 ; *Bibb & Faulkner v. Avery, Adm'r*, 45 Ala. 691 ; *McLane v. Van Epps*, June term, 1875 ; *Horn v. Lockhart*, 17 Wallace, 570.

2. The laws now in force regulating the settlement of estates of decedents, and the descent and distribution of property, were in force at the time appellant settled his executorship, and Alabama was a State then, endowed with the "powers and faculties of administration" as she now is, and as she was before the war, and her citizens who discharged the duties of their fiduciary trusts during the war according to law, and received and disbursed the only currency then in circulation, should be protected by the courts, especially when the facts and circumstances of the case show, that they acted in good faith.—*Parks, Brewer et als. v. Coffey*, January term, 1875 ; *Whitley v. Alexander*, 73 N. C. 444 ; *Waring v.*

[Morris et al. v. Morris.]

*Lewis et al.*, present term; *Blount et al. v. Moore, Adm'r*, Ib.; *Ferguson v. Long*, Ib.

3. The land as well as the personal property was sold under the will, and was sold for Confederate money; Chapman purchased and paid for it; Morris, the executor, made him a deed and he took possession by virtue of his purchase. There was no other currency in circulation at the time.

4. The executor was compelled to sell under the will, and the testimony shows that if he had made an effort to sell for any other than Confederate currency, he could have made no sale at all—he would have failed; and, under the will, he could not postpone the sale. The legatees were entitled to their legacies, and those who were of full age were present at the sale and ratified the conduct of the executor. Chapman ought not to be disturbed and ought to be permitted to enjoy the peaceable possession of the land, which in equity and good conscience he is entitled to.—*E. A. Blount et al. v. More, Adm'r*, present term.

, JAMES E. WEBB, *contra.*—1. The record shows that no valid final settlement was made by said executor, and such is averred in the bill. And no guardian *ad litem* for complainant accepted service of appointment and consented, in writing, to act.—*Searcy v. Holmes*, 43 Ala. 608.

2. If the executor was acting in good faith to complainant, trying to preserve the fund for him, as the will directed, why was he in such hot haste to collect the proceeds of the land before it was due, and have himself, as he testifies, appointed guardian, &c. ? If he was both executor and guardian, then the Probate Court had no jurisdiction to make the settlement.—47 Ala. 199; 44 Ala. 204; 41 Ala. 75; *Bruce v. Bryan*, January term, 1874.

3. The bill was filed by a legatee, to compel a final settlement and decree. Equity has jurisdiction.—1 Brick. Dig. p. 647, §§ 120, 121, 127; 36 Ala. 189.

4. Under section 9067 Rev. Code, (section 1743 of Code of 1852,) the jurisdiction of the Probate Courts to decree a sale of a testator's slaves and other personalty depended entirely upon the fact and allegation that the will gave no power. If the will did confer power of sale, then an order of sale made by the Probate Court is absolutely void.—*McCullum v. McCullum*, 43 Ala. 711; *Wilson's Adm'r v. Armstrong*, 42 Ala. 168; 35 Ala. 553.

5. These sales, made under and in pursuance of the orders of the court, can not be referred to the power of sale given by the will; and "said sale can derive no aid from the power thus conferred by the will."—*Ala. Con. M. E. Church, &c. v.*

[Morris et al. v. Morris.]

*Price, Ex'or*, 42 Ala. p. 39, o. p. p. 50; 33 Ala. 712; 4 Kent's Com. § 327. The sale of the slaves and other personalty was, then, a conversion by the executor.—See *Hall v. Chapman's Adm'rs*, 35 Ala. p. 559.

6. Some of the assignments of error present the question, whether the executor, who owed testator by inventory note, in good money, could discharge that liability in any other money. The administrator is chargeable with his own note. *Whitlock, Adm'r, v. Whitlock's Creditors*, 25 Ala. 543; *Whitworth v. Oliver*, 39 Ala. 293.

STONE, J.—The present bill does not seek to set aside any of the sales of the executor. On the contrary, it ratifies and confirms them, and claims relief solely on the ground that all the sales made were valid and binding. The executor and purchaser from him, can not be heard to controvert the legality of their own sales and purchases, because each is estopped, so far as they are personally concerned.—*Pistole v. Street*, 5 Por. 64; *Hopper v. Steele*, 18 Ala. 828; *Lamkin v. Ruse*, 7 Ala. 170; *Elliott v. Branch Bank*, 20 Ala. 345; *McCausland v. Drake*, 3 Stew. 344.

Hence, we hold, that in this case we need not inquire whether the sales were or could have been made under the powers contained in the will, or under the orders of the Probate Court.—See *McRae v. McDonald*, 57 Ala. 423.

The present bill was filed by James B. Morris, grandson of Thomas A. Morris, and seeks primarily and mainly to recover of the executor of the latter's will—William G. Morris—and his sureties on his bond as executor, the legacy given by the will of said Thomas A. to Thomas W. Morris, father of complainant, now deceased. This feature of the bill makes, and very properly makes, the executor of the will, his sureties, and the other legatees under the will, parties defendant. The complainant seeks to recover $2,550.61 from the executor and his sureties, being the sum found due the children of Thomas W. Morris, on the statement and allowance in the Probate Court of the executor's accounts, filed and made in March, 1864. This account current contained a statement of the entire assets of the estate, including the moneys collected from Chapman, after stated, and was filed for final settlement of the administration.

There is a second phase of the bill. It alleges a sale of the land by the executor, purchase by Chapman, payment of the purchase price in Confederate treasury notes, report by the executor to the Probate Court of the payment of the purchase-money, order by the court that the executor make title, and title actually made to Chapman, who is in posses-

sion.   The bill charges that the payment in Confederate money was illegal, and did not discharge the debt, makes Chapman a party defendant, and seeks to enforce a vendor's lien on the lands for the payment of the purchase-money promised by Chapman.   There was a demurrer to the bill for multifariousness; the alleged multifariousness consisting in the joinder in one suit of the two matters stated above. The Chancellor overruled this demurrer.

We do not consider it necessary to decide this question, for the following, among other reasons :   Thomas A. Morris, the testator, died in 1862, and his will took effect as of that date.   By the first clause of his will, he bequeathed and devised that all his estate be sold to the highest bidder, and the proceeds be equally divided among his children, after the expenses and debts of his estate were settled up.   This we judicially know was during the prevalence of the late civil war, when neither gold or silver, or United States money circulated or was to be obtained in Perry county, Alabama. We also know judicially that from that time to the downfall of the Confederacy in 1865, Confederate States treasury notes and their convertible equivalents were the only circulating medium we had.   The authority to sell contained in the will, contemplated no postponement of the sale, and a majority of the legatees urged an immediate sale.   Much the most valuable part of the property consisted of slaves.   Under the circumstances, we think it was both the privilege and duty of the executor to sell; and he was justified in receiving in payment the only currency in the country, Confederate treasury notes.—See *Ferguson v. Lowery*, 54 Ala. 510 ; *McRae v. McDonald, supra; Cumming v. Bradley*, 57 Ala. 224.   We do not mean to say that all the preceding circumstances were necessary to justify the executor in the collection of Confederate money, at the time it was received in this case.   Our rulings are that when a personal representative, in good faith, received Confederate money in the course of administration, he did not thereby commit a *devastavit*, or incur a greater liability than to account for the honest and faithful administration of the same.

Under these rules there is no pretense of claim against Chapman for unpaid purchase-money, or against the executor for selling and converting the property into Confederate money; for there is neither averment or proof of any acts of fraud, bad faith, or collusion, against any party to this record. See *McRae v. McDonald, supra; Hutchinson v. Owen*, at the present term.   There being, then, no equity in that feature of the bill which seeks to fasten a liability on Chapman, all the averments in that connection will be treated as redun-

dant, and they do not make the bill multifarious.—*Carpenter v. Hall*, 18 Ala. 439.

Previous to the death of Thomas A. Morris, in 1862, Thos. W. Morris, his son, had died, leaving three infant children, of whom complainant is one. In 1868 the other two died, aged respectively 14 and 12. The present bill was filed by James Brainard Morris alone, and seeks to recover the entire one-eighth of the estate which fell to him and his brother and sister. Personal representatives of said two deceased children are not made parties to the suit, but the bill avers they died in infancy, leaving no debts. There is no proof, however, of this last averment, and it is denied in the answers. Children 12 and 14 years old, having no living father, can and generally do owe debts, if they have property. This averment is very material to complainant's right to recover the interests of his deceased brother and sister.—*Van Derveer v. Alston*, 16 Ala. 494, 499 ; *Miller v. Eastman*, 11 Ala. 609, 614. Under the pleadings and proof in this record, the complainant can recover, at most, only the one-third interest of the eighth which would have fallen to his father, about $850.

It is contended for appellee that the executor's attempt to make a final settlement of his administration in March, 1864, was a failure, for two reasons: first, because the guardian *ad litem*, appointed to represent the minors on the settlement, did not accept the appointment in writing. In *Stahler v. Cook*, September, 1877, we decided that in proceedings in the Probate Court, written acceptance of appointment as guardian *ad litem* is not necessary. It is enough if the record shows, as it does in this case, that he did accept and serve. Second, it is contended that no final decree was rendered in this cause, and therefore the present bill will lie, to compel the executor to make final settlement. Without considering the question, *when* the final decree was written up, and the effect of delay therein, we feel bound to hold that the record fails to show a valid final settlement and decree, so far as the present complainant and his brother and sister are concerned. As to these interests it names no person as plaintiff.—*Rhodes v. Turner*, 21 Ala. 210 ; *Watts v. Watts*, 37 Ala. 543.

The present proceeding, then, must be treated as an application to recover the one-third interest of $2,550 from the executor, as executor, and his sureties. We have shown above that the executor is not responsible for having converted the property into Confederate money. If he is responsible at all, it is for the $850 found due complainant, and which was in Confederate money. It is contended, however, that he purchased two slaves, at the price of $1,890, and that

(29)

he should account for these. The entire purchases of the executor, and the debt due the estate from him, amounted to less than $2,850. His legacy and his commissions amounted to $2,800, leaving less than fifty dollars of this fund to be accounted for. The estate being settled as a solvent estate, he was authorized to retain this sum against his legacy and commissions. as far as the latter would go. Of the fifty dollars residuum, even if good money, the complainant was entitled to only one 24th part. Of a sum so trifling as this, the Chancery Court can not entertain jurisdiction.—1 Brick. Dig. 642, § 47.

In March, 1864, the executor, as executor, had in his hands $850, Confederate currency, in trust for complainant. Complainant was a minor, in the State of Texas, and the executor could not reach him, if he had desired, or if it had been his duty to do so. It was his duty as executor to retain it, and the will had directed him to retain it. There is no averment or proof that he could have invested it with any profit. It perished in his hands by the failure of the revolution, before he could obtain access to the complainant. He, the executor, testifies—and he is uncontradicted—that he kept the identical money set apart for complainant and his brother and sister, until it became valueless in his hands; and that the identical money is now on file in the Probate Court of Perry county. This presents a strong case of faithful administration; and the record fails to show one act of faithless or negligent conduct against the executor. He did what the will commanded, what the legatees to whom he had access desired, and he dealt with his own interests precisely as he did with those of the other legatees.

If this proceeding were against Mr. Morris as guardian, (which it is not,) there is nothing in the record to fasten a liability on him in that character.—See *Davis v. Davis*, 10 Ala. 299; *Whitworth v. Oliver*, 39 Ala. 286, 294–5.

The decree of the Chancellor is reversed, and a decree here rendered, dismissing the bill in the court below at the cost of the complainant.