# Gulf Red Cedar Lumber Co. *v.* O'Neal *et al.*

*Bill in Equity for Accounting and for Injunction.*

1. *Deed; alteration after delivery invalid.*—When a deed has been fully executed and delivered, it passes the title to the grantee therein, which can not thereafter be divested by mere change in the deed itself, with or without the consent of the grantee.

2. *Same; what constitutes sufficient delivery.*—If, after due signature and attestation of a conveyance, the grantor therein files it in the office of the judge of probate for record, this constitutes a sufficient delivery, completing the execution and delivery of the instrument.

3. *Trusts and trustee; execution of power.*—In the execution of the power by a grantee in a conveyance, a direct reference to the power is not necessary, nor is it necessary that the intention to execute the power should expressly appear upon the face of the instrument; but it must be apparent that the transaction is not fairly or reasonably susceptible of any

[Gulf Red Cedar Lumber Co. v. O'Neal, *et al.*]

other interpretation than as indicating an intention to execute the power; and this intention is to be collected from all the circumstances.

4. *Same; same; same.*—Where one who owns an estate in property and is also clothed with a power resulting from a trust in the same property, if as to a part of the land he executes a conveyance under such facts and circumstances as to make it apparent that it was his intention to execute the power, the conveyance will be referred to the execution of the power, and not to a disposition of the estate owned by him in said property.

5. *Same; same; case at bar.*—A father conveys to his five children certain specifically described lands, and in the deed of conveyance he reserves to himself "the right to control and manage the property hereinabove conveyed for the use and benefit of said named children," until a certain designated time, and he also reserved "the right to sell and convey any portion of the same and reinvest the funds in other property for the exclusive use and benefit of said children." After the execution of this deed, the father acquired. by deed from one of the children an undivided one-fifth interest in the property so conveyed. Subsequently, the father sold and conveyed by instrument in writing to a third party, for a consideration, all the cedar timber and cedar trees, standing, growing, lying down or having fallen on a portion of said lands previously conveyed to his children, together with the right of ingress and egress over other lands, and to use other lands as were necessary for the purpose of cutting the cedar timber and manufacturing and removing it from said lands. In said instrument there was a limit of time made as to the length of time the purchasers were to cut said timber. Just before the expiration of this time, there was an extension of three years granted. *Held*: That said conveyance from the father of the right to the timber, etc., was the execution of the power reserved to himself in his original deed to his children, as was also the instrument by which the extension of time thereto was granted.

6. *Chancery practice; parties to bill.*—Where a bill is filed in a court of equity to enforce the rights of the children of a decedent, and where it is shown that one of said children died before the filing of the bill, and the administrator of the estate of the child who died, and her only surviving child are made parties complainant to said bill, it is not necessary that her husband who survived her should be made a party, individually.

VOL. 131.

7.  *Same; same.*—Where a father, by a deed, conveys to his child-
    ren specifically described lands, and in said deed reserves
    the right to manage and control said lands and to sell and
    dispose of any portion of the same, and after the execution
    of said deed, he sells and disposes of the timber growing on
    a portion of said lands in execution of the power reserved, on
    a bill filed by the children of the original grantor, who were
    grantees in the deed, to enforce their rights under such
    deed, the administrator of the father, who was, at the time
    the bill was filed, dead, is not a necessary party to the suit.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed by Lee O'Neal, who was formerly Lee Crenshaw, Louisa Crenshaw, Lillian Wagner, formerly Crenshaw, and A. Z. Davis, and Cleave Davis, the only child of said Mary Davis surviving her. The complainants, Lee O'Neal, Lillian Wagner and Louisa Crenshaw are the children of Thomas C. Crenshaw, deceased. Mary Davis was also a child of Thomas C. Crenshaw, but she died before the filing of the bill, leaving surviving her, as stated above, Cleave Davis as her only child.

The facts of the case, as shown by the averments of the bill, are as follows: The said Thomas C. Crenshaw, in his life time executed a deed to said four children and Edward P. Crenshaw, another child, conveying certain lands described. The deed is made "Exhibit A" to the bill, and purports to have been executed on April 9, 1873, and to have recorded on the same day. Said deed contained the following provision, after having first conveyed the lands: "I hereby reserve to myself the right to control and manage the property hereinabove conveyed, for the use and benefit of said above named children until the youngest child arrives at the age of twenty-one years; and I also reserve the right to sell and convey any portion of the same and reinvest the proceeds in any other property for the exclusive use and benefit of said children."

It is averred that after the deed was duly recorded said T. C. Crenshaw, without the consent of either of the complainants. struck or caused to be stricken from the deed the words "until the youngest child arrives at

at the age of twenty-one years," and to be inserted in their place the words "during my life," and wrote at the bottom of the deed after his signature the following: "June 1st, 1873. The words 'until the youngest child arrives at the age of twenty-one years' were erased and the words 'during my life' were inserted before delivery;" and said memorandum was signed by him and attested. It is alleged that said changes were made after the record and delivery of the deed, but it is averred that if mistaken in this, then, it is averred, that the deed was delivered after the making of the memorandum. After the making of the deed, Edward P. Crenshaw, for valuable consideration, reconveyed to his father, said Thomas C., his undivided 1-5 interest in the lands by deed which is made "Exhibit D" of date January 14, 1882, and said Thomas C. subsequently conveyed the same undivided 1-5 interest to complainant, Lillian Wagner (then Crenshaw), the deed being of date December 18th, 1888. It is alleged, however, that in making this deed to Mrs. Wagner, said Thomas C. reserved the following rights and interests: "And I hereby reserve to myself the right to use, control and manage the property hereinabove conveyed for my own use and benefit during my life. And I also reserve the right to sell and convey or mortgage all or any portion of the same for the purpose of paying my debts or the debts of said grantee, or for the purpose of raising proceeds for my own use or the use of the grantee, or to reinvest the proceeds in other property for the use and benefit of said grantee."

This being the state of title, said Thomas C. Crenshaw, Louisa Crenshaw and Lillian Crenshaw (now Wagner) executed on the 18th day of December, 1888, a conveyance and contract, in one instrument, to Joseph Steiner & Sons, by which the right to cut cedar timber off a part of the lands which had been conveyed by said Thomas C. to his children—said right to cut and use the timber to extend for a period of ten years from said 18th day of December, 1888, and to end at that time. Rights of ingress and egress upon the lands were given to said Steiner & Sons, and there were other provisions which it is unnecessary to notice. This agree-

ment is copied as "Exhibit B" to the bill.

The defendant corporation, The Gulf Red Cedar Company, cut some timber from the lands covered by the agreement within the period limited by it, having acquired the rights of Joseph Steiner & Sons thereunder by regular conveyances. Before the expiration of said contract for cutting, to-wit, the 25th day of August, 1895, Thomas C. Crenshaw executed another agreement which proposes to extend the right to cut timber on the same lands from the 18th of December, 1898, for three years, to-wit, to the 18th day of December, 1901. A copy of this agreement is attached as "Exhibit C." It recites the making of the first agreement and its transfer and assignment by Joseph Steiner & Sons to a Virginia corporation and from it through still another to the Gulf Red Cedar Company and makes said transfers a part of said second agreement. This agreement was executed by Thomas C. Crenshaw alone. Under this last agreement the Gulf Red Cedar Company has cut a very large amount of timber of great value. It is also alleged on information and belief that said company has cut timber from other lands which were embraced in the conveyance from Thomas C. Crenshaw to his children, but not embraced in said agreement with Steiner & Sons and the Gulf Red Cedar Company.

It is also alleged in the bill that the power reserved to said Thomas C. Crenshaw in said deed to his children did not authorize him to make the sale of timber disconnected from the land, and it is denied that either of said agreements was a valid exercise of the power so reserved.

It is admitted by the averments of the bill that the rights reserved by said T. C. Crenshaw in the conveyance to Mrs. Wagner of the undivided 1-5 interest which he had bought from his son Edward P. were so broad as to vest or retain in him, insofar as creditors of, or purchasers from, said Thomas C. were concerned, the title to said one undivided 1-5 interest. It is further admitted that said first agreement passed to J. Steiner & Sons said 1-5 interest along with the 1-5 interest which vested in Mrs. Wagner under the first deed, and

the 1-5 which vested in Louisa Crenshaw under said
first deed, and that thus 3-5 interest in the timber which
might be cut to December 18th, 1898, passed under said
first agreement. But it is denied that the 1-5 interest
of Mrs. Lee O'Neal (formerly Crenshaw) and the 1-5
interest of Mary Davis passed under said instrument.
It is, however, denied by the averments of the bill that
the interest of any of the complainants passed under
the second (extension) agreement, and it is averred that
the only interest that passed under that agreement was
the interest that said Thomas C. had retained in con-
veying to Mrs. Wagner the land he had bought from
Edward P. Crenshaw; and it is insisted that the in-
terest of none of the complainants passed under the
second (extension) agreement. It is averred that T. C.
Crenshaw held the lands during his life time in actual
possession in recognition of his deed to his children and
that after his death, which occurred in November, 1899,
and since that time complainants have been in posses-
sion of the land.

It is alleged that shortly after the death of said
Thomas C. the complainants gave notice to the defend-
ant corporation not to cut any more timber on the
lands; but that regardless of the notice it has continued
to cut timber not only on the lands described in the
agreement, but on other lands embraced in the deed
from said T. C. Crenshaw to complainants, and that
said defendant corporation has converted to its own
use the cedar timber on said lands—a large part of it
having been sawed up into cedar lumber. It is further
alleged that The Gulf Red Cedar Company had notice
at the times when it cut the trees and converted the
same to its own use of the fact that complainants were
the joint owners of the lands from which it was cut,
and of the extent of their interest therein.

The necessity for a discovery is alleged. It is averred
that for want of information or knowledge, complain-
ants are unable to tell how much cedar timber was cut
by said corporation from the lands described in the
agreement with Steiner & Sons, except that it was of
very great value, to-wit, $20,000; that they are likewise
unable to state the amount cut from other lands included
in the deed to them, except that it was of large

value, to-wit, $20,000; that likewise they are unable to state. the value of the timber cut by said defendant under the extension agreement except that they allege it to be of large value, to-wit, $50,000; that complainants, if they could ascertain within any accuracy (as they aver they can not), the whole amount of the timber that was cut off and converted by said defendant from all said lands, yet they aver that they are wholly unable, for want of knowledge and information, to show what proportion of the same was cut from the lands described in the Steiner contract during the ten years of its existence when said corporation owned 3-5 of what it cut and removed, and the amount cut off the same lands under the extension agreement when it only owned 1-5; that the corporation has refused to account to them or either of them for anything or as to the trees cut off of any of the land; and that as they can not learn with anything like accuracy the number and value of the cedar trees cut from said lands as aforesaid, a discovery from the corporation through its officers, books and agents is absolutely necessary; that by reason of the fact that all the data and information necessary to fix the amounts which the corporation should pay to the complainants rests peculiarly within the knowledge of the corporation and can not be ascertained except by discovery from defendant of the amount of the trees cut by it from said lands and the ruling prices thereof, a resort to a court of equity is necessary. It is also alleged that as the time covered by the extension agreement has not yet expired and as the defendant still insists on the same as conveying all the interests of the complainants, that said agreement is a cloud upon the title in so far as their 4-5 interest are concerned.

It is alleged that defendant Parish is president of the Gulf Red Cedar Company and resides in the city of Richmond, Va.; that he visits Alabama occasionally when he examines into or acquaints himself with the business of the corporation; that in his absence from the State one George B. Scott manages or supervises the business of the corporation; that not being informed who is better able by reason of a knowledge of the facts

to make answer for the company, both said Parish and said Scott are made defendants.

A large number of interrogatories are propounded to the corporation to be answered by said Parish or Scott as one of the other may have knowledge of the facts. In said interrogatories a discovery is sought of the various matters alleged in the bill in respect to the amount and value of the timber cut. Complainants ask that the corporation may be compelled to produce for inspection and investigation all its books of accounts in relation to said matters.

It is alleged that after complainants had given notice to defendant to cease cutting timber they continued to cut and that the timber cut was greatly enhanced in value by being sawed into lumber for pencils, veneering, etc. It is insisted that as to timber cut since the notice, the defendant is liable to account for its enhanced value as sawed lumber. It is alleged, however, in the alternative, that if not so liable, said defendant is liable on the basis of the value of such timber as trees cut down.

Mary Davis is alleged to have died in Lowndes county, Alabama, in October, 1886, and that in June, 1900, letters of administration were issued to A. Z. Davis, and by amendment to the bill it is alleged that she left an heir at law, Cleave Davis, who is joined as complainant with the administrator.

The bill prays an accounting of the amounts and value of the cedar timber cut from the lands during said respective periods and that on final hearing defendant may be compelled to pay complainants the amounts due them, respectively, for their shares therein.

It is sought to make the defendant liable for the enhanced value as sawed timber after notice to desist cutting, but, in the alternative, it is prayed that the defendant may account for it as trees cut down. An injunction restraining further cutting from the property is also prayed for. There is a prayer for general relief. The bill is sworn to.

The defendants moved to dismiss the bill for the want of equity. To the original bill and the bill as amended the defendants filed separate demurrers, in each of

which they assigned thirty-four grounds. These grounds may be summarized as follows: 1. It is shown by the averments of the bill that the complainants have a plain and adequate remedy at law. 2. The administrator of the estate of Thomas Crenshaw, deceased, should be made a party to the suit. 3. The heirs-at-law of Mary Davis should be made parties complainant. (As shown in the statement Cleave Davis, the only child of Mary Davis, was joined as a party complainant.) 4. A. Z. Davis, the husband of Mary Davis, is a necessary party complainant. 5. A. Z. Davis, as the administrator of Mary Davis, deceased, is improperly joined as a party complainant. 6. There is a misjoinder of parties and a misjoinder of causes of action. 7. It is shown by the averments of the bill that any change in the deed alleged to have been made after it is delivered was ratified by the complainants' failure to object for so long a time. 8. The complainants' demands are stale and barred by the statute of limitations of six and ten years. 9. It is shown by the averments of the bill that the trust of Thomas C. Crenshaw, created by his deed to complainants, has not been settled, and that he has not accounted to complainants for the purchase money for which he sold said timber. 10. It is shown by the bill, as amended, that Thomas C. Crenshaw did not account to complainants for the purchase of the sale of the timber from the said lands, or for the money received by him as the consideration for the extension agreement. 11. It is shown by the averments of the bill and the amendments thereof and the exhibits thereto that said Thomas C. Crenshaw had the power and the right to make the agreement and conveyance executed by him to Joseph Steiner & Sons and also to make the said extension agreement; and that the complainants are bound thereby. 12. Complainants have no right and authority to require the answers to interrogatories propounded to be made by the officers designated in the bill, and said Parish and Scott, as such designated officers, are improperly made parties to the bill.

Upon the submission of the cause upon the motion to dismiss for the want of equity and the demurrers,

the chancellor rendered a decree overruling each of them. From this decree the defendants appeal, and assign the rendition thereof as error.

.C. E. HAMILTON and D. M. POWELL, for appellant. The delivery of the deed is one of intention, and unless Crenshaw intended that the deed should have been delivered as originally written, then the record of the same was not a delivery. The change of the deed clearly shows that Crenshaw did not intend that the record of the same should operate as a delivery, from the fact that the change in the deed was made by Crenshaw and was signed by him stating that the same was done before delivery.—*Harves v. Pike,* 105 Mass. 560; *Ruckman v. Ruckman,* 33 N. J. Eq. 354; *Alexander v. Alexander,* 71 Ala. 298; Devlin on Deeds, (2d ed.), § 262. When the trustee is clothed with the power to sell real estate, or any part thereof, then a sale by him is valid and conveys the legal title. Devlin on Deeds (2d ed.), § 446; *Security Co. v. Pratt,* 65 Conn. 161.

J. M. CHILTON, *contra.*—The deed having been recorded on the day of its execution the law presumes it was then delivered.—*Sheffield L. I. &c Co. v. Neill,* 87 Ala. 160; *Woodstock v. Richardson,* 94 Ala. 631; *Frisby v. McCarty,* 1 Stw. & P., 62.

Both agreements made by T. C. Crenshaw were void in that they do not refer to the power, or profess to have been executed in pursuance of th same. Furthermore, said Crenshaw did have an interest that would pass under them. Of course the full legal title passed by the deed from Crenshaw to his children. There remained in him only a power to sell for reinvestment, and to manage the lands unless and until sold. This being so, his conveyances or agreements should have shown they were executed under the power, or made reference to its subject matter.—*Jay v. Stein,* 49 Ala. 514; *Witter v. Dudley,* 46 Ala. 664. If, in any event, a deed which does not refer to or mention the power or its subject matter could be referred back to the power, it is a settled principle that it will not be so referred back, when the grantor himself has an interest that

[Gulf Red Cedar Lumber Co. v. O'Neal, *et al.*]

could pass under it.—*Blagg v. Miles,* 1 Story 426; *Gosson v. Ladd,* 77 Ala. 223. Said agreements being invalid, it necessarily follows that the defendant corporation is liable to respond to Mrs. Lee O'Neal and the representative and heir of Mary Davis for a fifth each of the value of all timber cut under the first agreement, and to all the complainants for four-fifths the value of all timber cut under the second.

The lands not having been adversely held, trover may be maintained for trees cut down and converted.—1 Wash. Real Prop. 199; 3 Brickell, 779, § 1, *et seq.; Treat v. Nelson,* 80 Ala. 230; *Brooks v. Rogers,* 111 Ala. 121, 123; *Mather v. Trinity Ch.,* 3 S. & R. 509; s. c. 8 Am. Dec. 663, 668-9; *Harland v. Harland,* 15 Pa. St. 507; *Anderson v. Heplar,* 34 Ill. 436; s. c. 85 Am. Dec., 318; *Trust v. Old,* 6 Rand. Ch. 566; s. c. 18 Am. Dec., 748, 751; 2 Taylor Land. & T., § 74.

The agreements being void as to those not signing them and the defendant being under the legal duty of responding to the complainants, can complainants resort to a court of equity? We say they can, on four principles: 1. Because of the fact that the complainants and defendants are joint owners of the property. 2. For the reason that a discovery is necessary. 3. An injunction is sought. 4. It is sought to remove a cloud from the title.—*Wilkinson v. Stewart,* 74 Ala. 198; *Gale v. Johnson,* 80 Ala. 395; *Ferris v. Montgomery L. & I Co.,* 94 Ala. 563; see also *Stow v. Bozeman,* 29 Ala. 297; *Scruggs v. Driver,* 31 Ala. 274; *Stewart v. Stewart, Ib.* 207; *Price v. Carney,* 75 Ala. 546; *Hooper v. R. R.,* 69 Ala. 529; *Ware v. Russell,* 70 Ala. 174; *Con. Life Ins. Co. v. Webb,* 688; 2 Am. & Eng. Dec. in Eq., 675.

HARALSON, J.—1. The deed of Thos. C. Crenshaw to the complainants, of date 9th April, 1873, purports to have been received by the judge of probate and recorded on the day of its date, and this fact is so averred in the bill. It contains the provision, "I hereby reserve to myself the right to control and manage the property hereinabove conveyed for the use and benefit of said named children, until the youngest child arrives at the age of twenty-one years."

It is averred, that on June the 1st, 1873, without the consent of either of the complainants, the beneficiaries in said deed, the said Thos. C. Crenshaw, erased from said deed, the words, "until the youngest child arrives at the age of twenty-one years," and the words, "during my life," were inserted by him in the place thereof, and he wrote at the bottom of his signature, which had been affixed on the 9th of April, 1873, the words and figures: "June 1st, 1873. The words 'until the youngest child arrives at the age of twenty-one years,' were erased, and the words, 'during my life' were inserted before delivery," which written words were signed by him and witnessed by W. H. Crenshaw.

The complainants aver, that said deed had in fact been delivered before said change was made, to-wit, when the same was recorded, and as they are advised, they allege that said Crenshaw had no power or authority to change said deed, or to divest or in any manner affect the estate which had vested in them by the previous execution and delivery of the same. But they further aver, that if they are mistaken in this, then they aver that said deed as changed as aforesaid, was executed by said Thomas C. Crenshaw, on said first day of June, 1873, and was thereupon, to-wit, on said last mentioned day, delivered by said Thos. C. Crenshaw, to the grantees therein named, in whose custody the same now is.

Whether the said change in the deed by the grantor to his children, occurred before or after delivery, it is manifest the change affects only the duration of the trust, and not the trust itself. It is well settled in this State, whatever may be the rule elsewhere, that whenever a deed has been fully executed and delivered, it passes the title to the grantee therein, which cannot thereafter at law be divested by a mere change in the deed itself, with or without the consent of the grantee; and that when, after due signature and attestation of a conveyance the grantor files it in the probate office for record, this constitutes a sufficient delivery, completing the execution and delivery of the instrument. *Elston v. Comer*, 108 Ala. 76; *Woodstock I. Co. v. Richardson*, 94 Ala. 631; *Sheffield L. I. & C. Co. v. Neill*,

87 Ala. 158; *Walker v. Crews,* 73 Ala. 412; *Frisbie v. McCarty,* 1 Stew. & Port. 62.

If the alleged alteration in the deed was made after its delivery, then such alteration did not affect the conveyance, and the trust ceased when the grantor's youngest child became of age. If made before the delivery, then it was properly made, and the trust would continue during the life of the grantor. In either aspect, the *deed* is good, and in the averments of the bill, as to this matter, is found nothing upon which to predicate an objection to it as raised by demurrer.

2. The second error assigned, which is insisted on is, that the court overruled the demurrer to the bill, on grounds 29 and 30, viz., that it plainly appears, that Thomas C. Crenshaw had the power and the right to make the said extension agreement and bind the complainants thereby, and that said Crenshaw had the right to make the contract with Joseph Steiner & Sons, and complainants are bound thereby.

The argument used by counsel, and the only one employed on their part is, "When the trustee is clothed with the power to sell real estate, or any part thereof, then the sale by him is valid and conveys the legal title." There can be no dispute as to the correctness of the principle invoked, but at least, the question recurs, whether or not Thos. C. Crenshaw had the power, reserved in his deed to his children, to sell the timber and trees on the land, disconnected with a sale of the land itself, and if so, did he by his conveyances to Steiner & Sons, and the extension of the latter agreement by his contract with the defendant company, legally convey the trees and timbers on said lands, disconnected with any conveyance of the lands themselves.

The deed of Thos. C. Crenshaw to his children, and the reservation of his power therein, to control and manage the property described, for the use and benefit of his said children named therein, until the youngest of them arrived at the age of twenty-one, and his right to sell and convey any portion of the same and reinvest the proceeds in other property for their use, is not referred to in either one of his said conveyances to the

Steiners or the defendant, and no reference is made therein to his reserved powers in the deed to his children. The conveyance to the Steiners, is simply one by him joined in by his two children, Louisa and Lillian Crenshaw, conveying to the grantees, "all the cedar timber and cedar trees, standing or growing or lying down or fallen," on the lands described; and the other, to the defendant company, was executed by him alone, in consideration of the sum of $200, extending the privilege or right to said trees and timber, as attempted to be granted to said Steiners, for three years from the expiration of said Steiner contract or conveyance. Said Thos. C. Crenshaw, confessedly, had an undivided fifth interest in the property, which interest had been reconveyed to him by his son Edward. The bill shows he conveyed this one-fifth interest, afterwards, to his daughter, Lillian Wagner, under her then name of Lillian Crenshaw, but in so doing, he reserved the right to use, control and manage the same for his own use and benefit during his life, and to sell, convey or mortgage all or any portion of it. These latter conveyances from his son to him, and from him to his said daughter, Lillian, were executed after the said conveyance to the Steiners, but long before the one executed by him, alone, to the defendant company, in extension of the Steiner conveyance. It is shown that all the children of said Thos. C. were of full age prior to the time of said extension agreement.

It is thus made to appear, that in respect to his creditors and purchasers, the said Thos. C. Crenshaw had an undivided one-fifth interest in said lands,—the trees and timbers on which he had the right to sell,—in his own right, disconnected with his power to sell the remaining four-fifths interest, under the power reserved under his said deed to his five children.

As to the proper execution of the power reserved by said Thos. C. in his said deed, we have said that he made no reference to said deed in his sale of the timbers and trees to said Steiners, nor in the one to the defendant. On the proper execution of such a power, Mr. Devlin observes: "It is not absolutely necessary to the execution of a power, that the deed should recite

or refer to it. But when the grantor in a deed, has an estate which will pass without an execution of the power, and the deed is silent on the interest to be conveyed, the law will presume that he intended to convey the estate that he possessed and no more."—1 Dev. on Deeds, § 423. On the same subject, Chancellor Kent states, that "The general rule of construction, both as to deeds and wills is, that if there be an interest and a power existing together in the same person, over the same subject, and an act be done, without a particular reference to the power, it will be applied to the interest, and not the power. If there be any legal interest on which the deed can attach, it will not execute a power. If an act will work two ways, the one by an interest and the other by a power, and the act be indifferent, the law will attribute it to the interest and not to the authority, for *fictio cedit veritati.*"—4 Kent. 335.

We have indulged the foregoing extracts from Devlin and Kent, as placing the contention of the appellee, —that there was no execution of the power reserved to himself in his deed to his children, when he executed the deed to the Steiners and the one in extension of it to defendant,—on the strongest grounds on which the authorities place it. But the technical rule as thus stated, which at one time in many cases seems to have prevailed, has undergone modification, for the sake of sustaining and not defeating what may appear to be the intention of the grantor.

In *McRae v. McDonald*, 57 Ala. 423, this court said that it is not necessary, that an intention to execute a power of sale should expressly appear upon the face of the instrument; but that it was sufficient if it appear by words, acts or deeds, clearly demonstrating that intention.—2 Story Eq. Juris., § 1062 a.

The same principle is announced in *Matthews v. McDade*, 72 Ala. 387, where, making reference to the case just cited, it is said, that "It must be apparent that the transaction in question is not fairly and reasonably susceptible of any other interpretation, than as indicating an intention to execute the power; and this intention is to be collected from all the circumstances."

Citing *Sir Edward Cleres' case*, 6 Co. R. 17; *Pomeroy v. Partington*, 3 Term R. 665.

In *Gindrat v. Montgomery G. L. Co.*, 82 Ala. 596, the question in hand, on reference to many English and American authorities, underwent elaborate discussion. Quoting Judge Story in *Crane v. Morris*, 6 Pet. 588, "that it is sufficient if the power exists, and is intended to be executed, and that this is a matter *in pais*, to be collected from all the circumstances of the case;" and from Kent (4 Kent Com. 334), that "the power may be executed, without reciting it, or referring to it, providing that the act shows that the donee had in view the subject of the power," the court said: "The early English cases on the subject established a rule which so frequently operated to defeat the intention of grantors and testators, as to require a decided departure from it, accompanied with frequent criticisms of its unsoundness by the most learned judges. In one case, Lord Eldon was induced to declare, that he was 'not sure the rule did not oblige the court to act against what might have been the intention nine times out of ten.' *Nannock v. Horton*, 7 Ves. Jr. 398. In another case, an eminent Vice-Chancellor said: 'I must, although almost ashamed to say it, decide against what I firmly and sincerely believe to have been the intention of the testatrix, that the power of appointment has not been executed. I am bound, however, by the authorities. I cannot help myself, and I must so decide.'—*Davies v. Thorns*, 2 De Gex. & Sm. 347. So, in another case, Sir William Grant was forced, as a judge, to reach a conclusion which his judgment as a jurist repudiated. *Jones v. Tucker*, 2 Mer. 533."

In *Blagge v. Miles*, 1 Story's R. 426, Judge Story, discussing the struggle long waged, as to whether the intention of the testator was to prevail, or whether a technical construction of law, given to certain phrases, was to prevail over intention, remarking that this struggle at last seemed to have terminated in favor of the intention of the testator, says: "I apprehend, that similar doctrines now prevail in regard to the execution of powers. * * * The main point is, to arrive at the intention and object of the donee of the

power in the instrument of execution; and, that being once ascertained, effect is given to it accordingly. The authorities may not all be easily reconcilable with each other. But the principle furnished by them, however occasionally misapplied, is never departed from, that if the donee of the power intends to execute, and the mode be, in other respects, unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative."

It is said in Tiedeman on Real Property, section 569, that "The courts have, of late years, so far relaxed the rule as to construe the instrument to be, by necessary intendment, a good execution of the power, if it cannot operate in any other way, notwithstanding the deed or will purports to dispose only of individual property of the donee." Touching the same subject, Mr. Washburn (2 Wash. Real Prop. 713) says: "An inference as to the intention may be drawn from the character of the property of the donee of the power. If his property, not subject to the power is so small, or of such a nature that the descriptions of the property in the deed or will are meaningless unless construed as applying to the property subject to the power, the deed or will will be construed as an execution of the power. Thus, if one have a life-estate in land, and a power of appointment in fee, and conveys the fee, it is an execution of the power."—*Bishop v. Remple,* 11 Ohio St. 277, and other cases cited in *Gindrat's case,* 82 Ala. *supra.* "When a person conveys land for a valuable consideration, he must be held as engaging with the grantee to make the deed as effectual as he has the power to make it."—*Hall v. Preble,* 68 Me. 100; *South v. South,* 91 Ind. 221; *Funk v. Eggleston,* 92 Ill. 515.

By the deed of T. C. Crenshaw, of the 9th of April, 1873, he conveyed to his children, twenty-three hundred and thirty-six acres of land. In it he says, to repeat what we may have in substance said: "I hereby reserve to myself the right to control and manage the property hereinabove conveyed, for the use and benefit of said named children, until the youngest child arrives at the age of twenty-one years; and I also reserve the

right to sell and convey any portion of the same, and reinvest the funds in other property for the exclusive use and benefit of said children," followed by a warranty of title to them.

In the deed executed to the Steiners, by himself and two daughters, on the 18th December, 1888, he granted and sold to them for the sum of $2,700, as has been stated, all the cedar timber and cedar trees now standing or growing or lying down or fallen in and upon 640 acres of said land, excepting the fence rails and fences and all the cedar cabins and houses and hewn cedar timber on said lands, together with the right of ingress and egress over said lands and all other lands of the grantors adjoining and contiguous to said lands, for the purpose of getting, cutting, sawing, manufacturing, removing, using and otherwise disposing of the cedar trees and timbers conveyed, which privilege was to last for ten years, and thereafter all the trees and timbers remaining on said lands was to be the property of the grantors. This was followed by covenants of warranty, that the grantors were seized of the lands and had a good right to sell the timbers and trees therefrom.

From this it plainly appears, that the intention of the grantors was to sell the entire interest in the said trees and timbers; that the object of the execution of the power by said Crenshaw, and of the Steiners in purchasing, was that all the trees and timbers on said lands should be sold and pass to the Steiners, for the purpose of an immediate cutting, sawing, manufacturing and using in any profitable way. No other intention can be ascribed to the sellers or purchasers. If said Crenshaw did not intend to execute the power reserved in him, and intended merely to pass to the grantees his undivided one-fifth interest in the trees and timbers on the 640 acres, the whole purpose of the transaction would disappear. It would have been valueless to the grantees for the purposes expressed in the deed. The price received would seem to have been entirely disproportionate as consideration for an undivided fifth interest. No such intention can be fairly derived from the terms, conditions and circum-

stances of the case, but is absolutely foreclosed therefrom. All these circumstances indicate too clearly not to be believed, that in conveying the trees and timbers for value, he engaged with the grantee to make the deed as effectual as he had the power to do. The fact that his two daughters joined with him in the execution of the power, is no argument against his execution of it, and implies, the rather, that they aided him to do so, by the sanction of their names and the conveyance of their interest.

It has been seen, that in his Steiner deed, of which the defendant's deed purports to be a mere extension, said Crenshaw conveyed merely the cedar trees and timbers disconnected from the land itself. It is contended by the complainants, that this was not a valid execution of the power reserved in said Crenshaw, as the trees and timbers under his power could not be disposed of by him without a sale of the land itself. It may be admitted, as stated in an old case, which counsel refer us to, that, "The law doth not favor fractions and severances of trees from the freehold and inheritance of the land, because the trees would be thereby, often wasted and destroyed."—*Liford's case,* 6 Coke's Rep. 46, 48. In *Heflin v. Bingham,* 56 Ala. 574, it was said: "Growing trees are a part of the realty, and a sale of them, without a compliance with the terms of the statute of frauds, does not pass the title." If one, therefore, sells and conveys his land, without any reservation of the timbers on it, the conveyance will pass the trees and timbers thereon. As said by Mr. Tiedeman, "A grant of lands, therefore, without any qualification, conveys not only the soil but everything else which is attached to it, or which constitutes a part of it, the buildings, mines, trees, growing crops, etc. Even trees which have been cut, and are lying upon the land, have been said to pass with the land."—Tiedeman on Real Prop., § 2, and authorities there cited. But this rule does not apply, where there is a reservation in the grant of the timbers and trees on land sold, nor to structures which would pass thereunder, where there is privilege reserved to remove them.—*Harris v. Powers,* 57 Ala. 139.

In the deed before us, however, the grantor reserved to himself, as we have seen, the right to control and manage the property conveyed (to his children) for their use and benefit, until his youngest child arrives at the age of twenty-one years, and also the right to sell and convey any portion of the same, and reinvest the proceeds in other property for their use and benefit. These trees and timbers were a valuable portion of the property conveyed, and in the proper control and management of the same, the best interests of the beneficiaries might well have required him to sell the same, reserving the land, and to do so, certainly fell within his power to dispose of a portion of the property.

The demurrer in two separate grounds, as before stated, sets up, 1st, that the said T. C. Crenshaw had the power and the right to make the Steiner contract; and, 2d, that he had the right to make the said contract for the extension of the same with defendant. From what has appeared, the first of these was improperly overruled. If it be objected that this ground of demurrer goes only to a part of the bill, it may be replied, that if the said Crenshaw deed was changed before delivery, as set up for relief in the second alternative aspect, it is clear the bill fails to make a case of equitable cognizance; and being bad in this respect, subjected it as a whole to this ground of demurrer, which defect was properly taken advantage of in that way.—*Taylor v. Dwyer*, 129 Ala. 325; *Seals v. Robinson*, 75 Ala. 363.

As we have seen, the bill shows that said extension agreement to defendant was made by said T. C. Crenshaw alone, without any of his children joining in it with him, and that prior to its execution, all of his children were of full age. It is manifest, if the duration of the trust was until the youngest child of said Thos. C. Crenshaw arrived at the age of twenty-one years, as the bill alleges the case to be, then the trust and power had lapsed when he executed said extension agreement, and he conveyed thereby no greater interest than his own, which was an undivided fifth interest, but, that much he had the right to dispose of to defendant, which right he exercised. It is equallly mani-

fest, if the change in the deed,—making the duration of the trust for the life of said Thos. C. Crenshaw, instead of until the youngest child arrived at the age of twenty-one years, as is claimed by defendant to have been done,—was effected before its delivery, that said extension agreement was within the power reserved by said Crenshaw, and the said extension contract stood, in this respect, on the same footing with the Steiner deed. How this may be, is a question of fact, to be ascertained in the future progress of the case.

3. Mary Davis, one of the children of said Thos. C. and beneficiaries under his said deed to his children, died in Lowndes county, Alabama, in 1886, leaving an only child surviving her, whose name was Cleave, a minor over fourteen and under twenty-one years of age. Said Mary left property in Lowndes county, and in June, 1900, letters of administration were duly issued to A. Z. Davis, her husband. Said Cleave is joined as complainant, by his next friend, A. Z. Davis, his father. He claims and sues for the value of such portion of said trees and timbers as were cut and appropriated by defendant, prior to the death of his intestate mother.

It is objected that A. Z. Davis, individually, under these facts should have been made a party complainant. All that the defendant can ask is, that when it pays the debt it owes, if any, it shall receive a discharge. If A. Z. Davis, as the next friend of his son, sues to recover the interest claimed, he would be forever concluded when defendant responds to his son, in case of recovery. Moreover, the demurrer goes to the whole bill, and in this, it is too broad. It should have been directed to the part of the bill which seeks a recovery of Mrs. Davis' interest. The bill would be good, as for the other complainants, if that interest were eliminated from it.

4. The remaining objection, that the administrator of Thos. C. Crenshaw, who died in November, 1899, is a necessary party to the suit, from the fact, as stated in argument, that deceased "in conveying the timber which complainants are seeking to make appellants account for, conveyed the same by warranty deed, and a recovery by complainants would necessarily fix a liability on the estate of Thos. C. Crenshaw."

There is nothing in this ground of objection. The complainants are seeking no recovery against the estate of said Crenshaw, and no damages they may recover in this suit against the defendant, would be any basis for a recovery of damages by defending against said Crenshaw's estate. It would not be the same debt, nor a debt of the same nature as the damages that defendant might become entitled to recover, if any, against the said estate for a breach of covenant. In this suit, the court would not, in any event, undertake such a decree in favor of defendant. The question of liability of said estate to defendant, is one between it and the estate, and the question of damages here sought by complainants, is one between them and defendant, on grounds distinct from any alleged breach of covenant by said intestate. If defendant has any right of recovery against said estate for such alleged breach, it would be the amount of the purchase money paid for the lands, with interest and costs of suit.—*Prestwood v. McGowin*, 128 Ala. 257, and authorities there cited.

For the error as indicated in overruling the demurrer, the decree is reversed and the cause remanded.

Reversed and remanded.